## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## AT SPRINGFIELD, ILLINOIS

| | |
|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION, INC.** | |
| *Plaintiff*, | |
| *v.* | |
| **STEVE SANDVOSS**, in his official capacity as Executive Director of the Illinois State Board of Elections, **KYLE THOMAS,** in his official capacity as Director of Voting Systems and Registration, **CHERYL HOBSON** in her official capacity as Deputy Director of Voting and Registration, and the **ILLINOIS STATE BOARD OF ELECTIONS**. | Case No. 20-CV-3190-SEM-TSH |
| *Defendants*. | |

**Plaintiff Public Interest Legal Foundation's**
**Motion for Summary Judgment and Memorandum of Law**

# **Table of Contents**

Table of Authorities ......................................................................................... ii

Introduction ....................................................................................................... 1

Undisputed Material Facts ................................................................................. 2

Argument ........................................................................................................... 7

    I.      Summary Judgment Standard ............................................................. 9

    II.    The Foundation is Entitled to Summary Judgment ............................ 9

          A.  The Foundation Requested the Voter File and Defendants Denied the Foundation's Request ................................................................. 9

          B.  Defendants' Denial of Access to the Voter File Violates the NVRA ........ 10

                1.   The Voter File Is Subject to Public Disclosure Under the Plain and Unambiguous Terms of the NVRA ........................ 10

                       a.   The Voter File is a "Record" .................................. 11

                       b.   The Voter File "Concern[s]" the "Implementation of Programs and Activities Conducted for the Purpose of Ensuring the Accuracy and Currency of Official Lists of Eligible Voters[.]" ............................................... 11

                           i.   The Voter File Reflects and Is the End-Product of Illinois' Voter List Maintenance Activities .................. 13

                           ii.   The Voter File Is a Compilation of Voter Registration Records, Which Illinois Uses to Determine Eligibility to Vote ............................................ 14

                2.   The Vast Majority of States Comply with the NVRA ................. 16

                3.   Disclosure of the Voter File is Consistent with Congress's Intent ................................................................ 18

          C.  Illinois Law Is Preempted and Superseded by the NVRA ........................ 19

Conclusion ....................................................................................................... 23

i

## Table of Authorities

*Cases*

*ACORN v. Edgar*,
  56 F.3d 791 (7th Cir. 1995) .................................................................... 20-21

*Ardestani v. INS*,
  502 U.S. 129 (1991).................................................................................10

*Arizona v. Inter Tribal Council of Arizona*,
  570 U.S. 1 (2013).......................................................................... 8, 20-21

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*,
  178 F.3d 350 (5th Cir. 1999) ...................................................................19

*Bellitto v. Snipes*,
  No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617 (S.D. Fla. Mar. 30, 2018).............19

*Bennett v. Spear*,
  520 U.S. 154 (1997)..................................................................................19

*Berrey v. Travelers Indem. Co. of Am.*,
  917 F. Supp. 2d 873 (C.D. Ill. 2013) .......................................................9

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992)..................................................................................10

*Ex parte Siebold*,
  100 U. S. 371 (1880)................................................................................20

*Freightliner Corp. v. Myrick*,
  514 U.S. 280 (1995)..................................................................................22

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
  505 U.S. 88 (1992)....................................................................................22

*Ill. Conservative Union v. Illinois*,
  No. 20 C 5542, 2021 U.S. Dist. LEXIS 102543 (N.D. Ill. June 1, 2021)................ 7-9

*Judicial Watch, Inc. v. Lamone*,
  399 F. Supp. 3d 425 (D. Md. 2019) ............................................... 15, 21-22

*Judicial Watch, Inc. v. Lamone*,
  455 F. Supp. 3d 209 (D. Md. 2020) .....................................................15 n. 4

*Mercatus Group, LLC v. Lake Forest Hospital*,
  641 F.3d 834 (7th Cir. 2011) ....................................................................9

*Project Vote, Inc. v. Kemp*,
  208 F. Supp. 3d 1320 (N.D. Ga. 2016) ...................................................11

*Project Vote/Voting for Am., Inc. v. Long*,
  752 F. Supp. 2d 697 (E.D. Va. 2010) ......................................................12

*Project Vote/Voting for Am., Inc. v. Long*,
  813 F.Supp.2d 738 (E.D. Va. 2011) ........................................................21

*Project Vote / Voting for Am., Inc. v. Long*,
    682 F.3d 331 (4th Cir. 2012) .................................................... 15, 19, 21-22
*True the Vote v. Hosemann*,
    43 F. Supp. 3d 693 (S.D. Miss. 2014).................................................12, 16

### Statutes and Rules

52 U.S.C. §§ 20501-20511 ............................................................................7

52 U.S.C. § 20501(b)(3) ...........................................................................18, 21

52 U.S.C. § 20501(b)(4) ...........................................................................18, 21

52 U.S.C. § 20507(i)(1) ....................................... 2, 4, 7-8, 10-12, 19, 21

10 ILCS 5/1A-25.......................................................................................... 2-3

10 ILCS 5/1A-25(4) ................................................................................... 4-5, 14

Ala. Code § 17-4-38 .......................................................................................16

Alaska Stat §15.07.127 ..................................................................................16

Ariz. Rev. Stat § 16-168 ................................................................................17

Ark. Code Ann. § 7-5-109 .............................................................................17

Cal. Elec. Code § 2184 *et seq.* .....................................................................17

Cal. Elec. Code § 2194 ..................................................................................17

Cal. Elec. Code § 2166 ..................................................................................17

Cal. Elec. Code § 2166.5 ...............................................................................17

Cal. Elec. Code § 2166.7 ...............................................................................17

Colo. Rev. Stat. § 1-2-302 .............................................................................17

Colo. Rev. Stat. § 24-30-2108 .......................................................................17

Colo. Rev. Stat. § 1-2-227 .............................................................................17

Conn. Gen. Stat § 9-35...................................................................................17

Conn. Gen. Stat § 9-36...................................................................................17

Conn. Gen. Stat § 9-23h .................................................................................17

Conn. Gen. Stat § 54-240g.............................................................................17

Del. Code Ann. tit. 15 § 304 ..........................................................................17

Del. Code Ann. tit. 15 § 1303 ........................................................................17

Del. Code Ann. tit. 15 § 1305 ........................................................................17

3 DCMR § 510................................................................................................17

Fla. Stat. Ann. § 97.0585 ...............................................................................17

（頭注）

Fla. Stat. Ann. § 741.406 ....................................................................17

Ga. Code Ann. § 21-2-225 ....................................................................17

Ga. Code Ann. § 21-2-225.1 .................................................................17

Haw. Rev. Stat. Ann. § 11-97 ..............................................................17

Haw. Rev. Stat. Ann. § 11-14 ..............................................................17

Haw. Rev. Stat. Ann. § 11-14.5 ...........................................................17

Idaho Code § 34-437 ............................................................................17

Idaho Code § 34-437A ..........................................................................17

Idaho Code § 19-5706 ..........................................................................17

Iowa Code § 48A.38-39 ........................................................................17

Iowa Code § 9E.6 ..................................................................................17

Kan. Stat. Ann. § 25-2320 ....................................................................17

Kan. Stat. Ann. § 25-2320a ..................................................................17

Kan. Stat. Ann. § 25-2309 ....................................................................17

Kan. Stat. Ann. § 75-451 ......................................................................17

Ky. Rev. Stat. § 116.095 .......................................................................17

Ky. Rev. Stat. § 117.025 .......................................................................17

Ky. Rev. Stat. § 14.304 .........................................................................17

La. Rev. Stat. Ann. 18:154 ....................................................................17

Mass. Ann. Laws ch. 51, § 47C ............................................................17

Mass. Ann. Laws ch. 51, § 37 ..............................................................17

Mass. Ann. Laws ch. 51, § 44 ..............................................................17

Mich. Comp. Laws Serv. 168.522 ........................................................17

Mich. Comp. Laws Serv. 168.509gg .....................................................17

Miss. Admin. Code § 99-47-1 ...............................................................17

Miss. Code Ann. 1-10-7.2 .....................................................................17

Mo. Rev. Stat. § 115.157-158 ...............................................................17

Mont. Code Ann. 13-2-115 ...................................................................17

Mont. Code Ann. 13-2-122 ...................................................................17

Mont. Admin. R. 44.3.1102 ..................................................................17

Neb. Rev. St. § 32-330-312 ..................................................................17

Nev. Rev. Stat. Ann. 293.440 ...............................................................17

Nev. Rev. Stat. Ann. 293.558 ...............................................................17

N.J. Stat. 19:31-18.1 ...................................................................................17

N.J. Stat. 47:1A-5........................................................................................17

N.J. Stat. 47:4-2 ..........................................................................................17

N.M. Stat. Ann. § 1-4-5.5 ............................................................................17

N.M. Stat. Ann. § 1-4-50 .............................................................................17

N.Y. Elec. Law § 3-103 ...............................................................................17

N.Y. Elec. Law § 5-508 ...............................................................................17

N.Y. Elec. Law § 5-602 ...............................................................................17

NC Gen Stat. § 163A-871 ............................................................................17

Ohio Rev. Code Ann. § 3503.13 ..................................................................17

Ohio Rev. Code Ann. § 3503.15 ..................................................................17

Okla. Stat. tit. 26, § 7-103.2 ........................................................................17

Or. Rev. Stat. Ann. § 247.940......................................................................17

Or. Rev. Stat. Ann. § 247.945......................................................................17

Or. Rev. Stat. Ann. § 247.955......................................................................17

25 Pa. Cons. Stat. Ann. § 1207 ....................................................................17

25 Pa. Cons. Stat. Ann. § 1403 *et seq.*........................................................17

RI Gen L § 17-9.1-6 .....................................................................................17

RI Gen L § 17-9.1-15 ...................................................................................17

S.D. Codified Laws § 12-4-9 .......................................................................17

S.D. Codified Laws § 12-4-41 .....................................................................17

Tenn. Code Ann. § 2-2-127 ..........................................................................17

Tenn. Code Ann. § 2-2-138 ..........................................................................17

Tex. Elec. Code § 18.005 .............................................................................17

Tex. Elec. Code § 18.008 .............................................................................17

Tex. Elec. Code § 18.009 .............................................................................17

Tex. Elec. Code § 13.004 .............................................................................17

Tex. Elec. Code § 18.0051 ...........................................................................17

Utah Code Ann. § 20A-2-104 ......................................................................17

Vt. Stat. Ann. tit. 15, § 1158 ........................................................................17

Vt. Stat. Ann. tit. 17, § 2141 ........................................................................17

Vt. Stat. Ann. tit. 17, § 2154 ........................................................................17

Va. Code Ann. § 24.2-406 ............................................................................17

Va. Code Ann. § 24.2-418 ..................................................................................17

Va. Code Ann. § 24.2-444 ..................................................................................17

Wash. Rev. Code Ann. 29A.40.130 .....................................................................17

Wash. Rev. Code Ann. 29A.08.720 .....................................................................17

Wash. Rev. Code Ann. 42.56.230 ........................................................................17

W. Va. Code, § 3-2-30 ........................................................................................17

W. Va. Code, § 48-28A-101 ...............................................................................17

Wis. Stat. Ann. 6.36 ...........................................................................................17

Wis. Stat. Ann. 6.47 ...........................................................................................17

Wyo. Stat. § 22-2-113 .........................................................................................17

Local Rule 7.1(D) .................................................................................................1

Fed. R. Civ. P. 56 .................................................................................................1

## Other Authorities

Merriam-Webster Dictionary, https://www.merriam-
webster.com/dictionary/concerns?src=search-dict-hed ....................................12

Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/record ......11

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1(D), Plaintiff Public Interest Legal Foundation ("Foundation"), hereby moves for summary judgment on its one-count Complaint. (Doc. 1.) The Foundation respectfully submits that there are no issues of material fact genuinely in dispute and the Foundation is entitled to judgment as a matter of law.

## Introduction

In the National Voter Registration Act ("NVRA"), Congress conferred upon the public a legal right to inspect and copy state voter list maintenance records. Over a year and a half ago, the Foundation sought, pursuant to the NVRA, to inspect (or if it was easier, receive) a record in the Defendants' possession concerning Illinois's activities conducted to keep Illinois's official voter list accurate and current. The Foundation sought what is perhaps the most fundamental example of such a record—the list of eligible voters itself with affiliated data, or as it is known in Illinois, the centralized statewide voter registration list (hereafter, the "Voter File"). The NVRA makes the Voter File a public record. Yet Defendants have failed to provide the Foundation with access to the Voter File.

The Foundation's right to receive the Voter File is not a close call. A recent decision squarely confronting the identical question by the U.S. District Court for the Northern District of Illinois supports the Foundation's position. It is undisputed that Illinois conducts various voter list maintenance activities, including creating new voter registration records, updating data for existing registrations (*e.g.*, address, surname), and cancelling voter registration records. Each activity is conducted to keep Illinois's official list of eligible voters accurate and current. Each of these activities is also collectively reflected in the Voter File. Simply put, the Voter File is the culmination and end product of the implementation of Illinois's voter list maintenance activities and contains critical list maintenance data. The Voter File contains registrant records and reflects

1

actions taken that Illinois uses to track, monitor, and determine who belongs on the official list of eligible voters. As such, the Voter File plainly concerns Illinois's voter list maintenance programs.

Illinois law prohibiting disclosure to the Foundation does not and cannot change the result here because federal law is superior to any conflicting state law under the Constitution's Supremacy Clause.

Congress made *all* voter list maintenance records subject to public inspection precisely so that election administration is transparent. That cannot happen in Illinois because Defendants are concealing list maintenance records from public inspection. Defendants cannot overcome the plain and unambiguous language of the NVRA or its preemptive effect. Judgment should therefore enter that Defendants are in violation of the NVRA and must provide the Foundation with access to the Voter File.

### Undisputed Material Facts

1.      Section 8(i)(1) of the National Voter Registration Act of 1993 ("NVRA") provides,

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision").

2.      10 ILCS 5/1A-25 sets forth, "The centralized statewide voter registration list required by Title III, Subtitle A, Section 303 of the Help America Vote Act of 2002 shall be created and maintained by the State Board of Elections as provided in this Section." *See also*

Defendant Sandvoss' Response to Plaintiff's First Request for Admission, attached herein as
**Exhibit A**, at Response to Request for Admission No. 4; Doc. 1 at ¶ 34, Doc. 8 at ¶ 34;
Deposition of Cheryl Hobson, attached herein as **Exhibit B**, at 7:22-9:2.

3.      The centralized statewide voter registration list is "generally referred to as the
statewide registration database. The information is compiled from individual registration
databases of each individual election authority across the state."  Deposition of Kyle Thomas as a
Representative of the Illinois State Board of Elections, attached herein as **Exhibit C**, at 10:22-
11:5, 38:2-6.[1]

4.      The Voter File is generated from the Database and is the official list of eligible
voters at the time it is generated. *See* Exhibit B at 57:1-20. Exhibit C at 29:22-30:12.

5.      Illinois permits only certain entities to obtain the Voter File. 10 ILCS 5/1A-25;
*see also* Exhibit B at 25:3-19.

6.      The Public Interest Legal Foundation, Inc., (the "Foundation") is a non-partisan,
public interest organization incorporated and based in Indianapolis, Indiana. The Foundation
seeks to promote the integrity of elections nationwide through research, education, remedial
programs, and litigation. The Foundation regularly utilizes the NVRA's Public Disclosure
Provision and state and federal open records laws that require government records be made
available to the public. Using records and data compiled through these open records laws, the
Foundation analyzes the programs and activities of state and local election officials in order to
determine whether lawful efforts are being made to keep voter rolls current and accurate. The
Foundation also uses records and data to produce and disseminate reports, articles, blog and

---

[1]  Throughout this Motion, the term "Database" refers to Illinois's centralized statewide voter
registration list as it exists in database form and the term "Voter File" refers to the disclosure of a
copy centralized statewide voter registration list as contemplated by 10 ILCS 5/1A-25.

social media posts, and newsletters in order to advance the public education aspect of its organizational mission. *See* Doc. 1.

7.      On October 16, 2019, the Foundation sent a letter by certified mail and email to the Executive Director of the Illinois State Board of Elections requesting an electronic copy of Illinois's statewide voter registration list pursuant to the NVRA's Public Disclosure Provision. Doc. 1 at ¶ 18, Doc. 8 at ¶ 18. The Letter was filed in this case as Docket Entry 1-4 (hereafter, the "Request Letter").

8.      The Foundation's Request letter acknowledged that 10 ILCS 5/1A-25(4) appears to prohibit the Foundation from receiving the Voter File and limited the Foundation to only view certain data at the State Board of Elections' office. Doc. 1 at ¶ 19, Doc. 8 at ¶ 19; Doc. 1-4 at 1.

9.      The Foundation's Request Letter also notified the Secretary that Illinois law violates the NVRA because it prohibits disclosure of the Voter File. Doc. 1 at ¶ 20, Doc. 8 at ¶ 20; Doc. 1-4 at 1.

10.      On October 29, 2019, the Foundation received a letter from the State Board of Election's General Counsel. Doc. 1 at ¶ 21, Doc. 8 at ¶ 21. The Letter was filed in this case as Docket Entry 1-5.

11.      The General Counsel's Letter explained, in part,

We have received your letter dated October 16, 2019, alleging a violation of 52 USC § 20507(i) by the State of Illinois based upon an allegation that "Illinois' disclosure and duplication limitations violate the text and intent of Section 8 of the National Voter Registration Act of 1993 (NVRA)."

Your organization is authorized to participate in the "public inspection" (52 U.S.C. § 20507(i)(1)) of Illinois voter registration information. As you correctly note in your letter, Illinois law provides that "any person may view the centralized statewide voter registration list on a computer screen at the Springfield office of the State Board of Elections, during normal business hours other than during the 27 days before an election." 10ILCS 5/4-8; see also 10 ILCS 5-7, 6-35.

Doc. 1 at ¶ 21, Doc. 8 at ¶ 21, Doc. 1-5.

12.     On November 14, 2019, the Foundation sent a letter to Mr. Menzel via email, acknowledging his response and advising him that the "NVRA requires not only inspection of voter list maintenance records, but also reproduction" of them. The Foundation further advised that "Illinois law appears to conflict with this requirement because it provides that we 'may not print, duplicate, transmit, or alter the list.' 10 ILCS 5/1A-25(4)." Doc. 1 at ¶ 22, Doc. 8 at ¶ 22. The Letter was filed in this case as Docket Entry 1-6.

13.     On January 31, 2020, counsel for the Foundation went to the State Board of Election's office in Springfield, Illinois to inspect the centralized statewide voter registration list. Doc. 1 at ¶ 26, Doc. 8 at ¶ 26; Exhibit B at 38:13-39:17.

14.     It is undisputed that "[t]he actual centralized statewide voter registration list cannot be retrieved and viewed by the public on a computer screen at the Springfield office of the [Illinois State Board of Elections]." Exhibit A at Response to Request for Admission No. 28; *See also* Exhibit B at 35:21-36:16, 38:13-39:17.

15.     On February 21, 2020, the Foundation sent a statutory Notice Letter to Defendants that notified them that Defendants' refusal to produce or allow the photocopying of any of the requested documents was a violation of the NVRA, and that the violation needed to be corrected within 20 days of receipt of the notice or else a lawsuit could be filed. Doc. 1 at ¶¶ 31, 41, Doc. 8 at ¶¶ 31, 41. The Letter was filed in this case as Docket Entry 1-9.

16.     The Foundation did not receive a response to its Notice Letter. Doc. 1 at ¶ 32, Doc. 8 at ¶ 32.

17.     Defendants have not allowed the Foundation to view the Voter File. Exhibit B at Exhibit B at 35:21-36:16, 38:13-39:17, 40:1-5; Exhibit C at 9:22-10:17, 21:21-24, 40:19-41:5.

5

18.     Defendants have not provided the Foundation with a copy of the Voter File. Exhibit B at 40:6-9; Exhibit C at 21:21-24.

19.     The following voter record information is maintained in the Database for each registered voter:

a.   Name. Exhibit B at 50:9-11.

b.   Residential address. Exhibit B at 50:12-14.

c.   Mailing address. Exhibit B at 50:15-17.

d.   Complete date of birth. Exhibit B at 50:18-19.

e.   Voter status. Exhibit B at 51:12-14.

f.   Date of registration. Exhibit B at 50:20-22.

g.   Date of updates or changes to voter record information. Exhibit B at 51:9-11.

h.   Voter participation history. Exhibit B at 50:23-51:1.

*See also* Deposition of Kyle Thomas, attached herein as **Exhibit D**, at 26:15-28:19; Exhibit C at 11:23-12:6.

20.     Election officials in Illinois, including Defendants, use the centralized statewide voter registration list to conduct voter list maintenance. Exhibit B at 17:5-20:6; 20:18-21:22; 56:20-24; Exhibit C at 22:13-23:12, 26:16-28:9, 31:7-32:5.

21.     List maintenance activities that affect registration information include the following activities:

a.   Documenting the registrant's status as Active or Inactive, Exhibit A at Response to Request for Admission No. 8;

b.   Documenting the registrant's status as Ineligible, Exhibit A at Response to Request for Admission No. 9;

c.   Documenting the registrant's registrant status as any another internal classification, Exhibit A at Response to Request for Admission No. 10;

d.   Documenting the registrant's address, Exhibit A at Response to Request for Admission No. 11;

6

e.    Documenting the registrant's name, Exhibit A at Response to Request for Admission No. 12;

f.    Documenting the registrant's birthdate, Exhibit A at Response to Request for Admission No. 13;

g.    Documenting that the registrant has moved to a new address, Exhibit A at Response to Request for Admission No. 14;

h.    Documenting that the registrant has requested to be removed from the registration list, Exhibit A at Response to Request for Admission No. 16;

i.    Documenting that an address confirmation card was sent to a registrant's address, Exhibit A at Response to Request for Admission No. 18;

j.    Documenting that the registrant was reported to be deceased, Exhibit A at Response to Request for Admission No. 19.

*See also*, Exhibit D at 20:21-21:5; 23:11-17; Exhibit C at 22:13-23:12; 24:1-22, 31:7-32:5.

22.    The centralized statewide voter registration list contains registration information maintained by the local election officials. Exhibit A at Response to Request for Admission No. 22. *See also* Exhibit C at 31:7-32:5.

## Argument

This is a case for declaratory and injunctive relief under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501-20511. With two irrelevant exceptions, section 20507(i)(1) of the NVRA is similar to a federal freedom of information law, albeit more powerful than FOIA, requiring election administration officials to "make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision").[2]

A recent decision from the United States District Court for the Northern District of Illinois, as well as the full weight of other authority, supports the Foundation's Motion. There,

---

[2] "[P]rograms and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" are referred to as "voter list maintenance" programs or activities.

7

the court denied defendants' motion to dismiss plaintiffs' claim that the Illinois State Board of Elections violated the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i), by failing to "produce electronic voter registration data for Illinois." *Ill. Conservative Union v. Illinois*, No. 20 C 5542, 2021 U.S. Dist. LEXIS 102543, at *1-2 (N.D. Ill. June 1, 2021). Relevant to the Foundation's Motion, "Defendants argue[d] that the NVRA only requires disclosure of records related to how the State maintains its eligible voter list and not the voter lists themselves, pointing out that Section 8(i) uses language concerning 'the implementation of programs and activities.'" *Id*. at *13 (quoting 52 U.S.C. § 20507(i)(1)). The court stated that defendants "fail[ed] to provide any legal authority for their preferred construction of the statutory language," *id*. at *13, and recognized that "the courts that have addressed the question have uniformly reached the conclusion that the NVRA's reference to 'records' in Section 8(i) includes voter list data," *id*. at *14 (collecting cases). Consequently, the court "accept[ed] that Plaintiffs' request seeks voter registration information that falls within Section 8(i)'s disclosure provision." *Id*. at *15.

The *Ill. Conservative Union* court explained that "[b]ecause Congress passed the NVRA pursuant to the Elections Clause, the Elections Clause, not the Supremacy Clause, provides the proper starting point for the preemption analysis" and "[t]he traditional presumption against preemption does not apply in Elections Clause cases." *Id*. at *16 (citing *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 (2013)). The court concluded, "Plaintiffs have plausibly alleged that [Illinois's] prohibition on photocopying conflicts with Section 8(i) and frustrates the NVRA's purpose of providing voter information to the public to help ensure the accuracy and currency of voter registration rolls." *Id*. at *19.

Similarly, the Foundation requested and was denied access to Illinois's Voter File. For the reasons that follow, judgment should enter for the Foundation.

## I.    Summary Judgment Standard

"'Summary judgment is appropriate when the pleadings and submissions in the record indicate the absence of any genuine issues of material fact, such that the moving party is entitled to judgment as a matter of law.'" *Berrey v. Travelers Indem. Co. of Am.*, 917 F. Supp. 2d 873, 877 (C.D. Ill. 2013) (*quoting Mercatus Group, LLC v. Lake Forest Hospital*, 641 F.3d 834, 839 (7th Cir. 2011)).

## II.    The Foundation is Entitled to Summary Judgment.

### A.  The Foundation Requested the Voter File and Defendants Denied the Foundation's Request.

It is undisputed that the prior to the filing of this litigation, the Foundation requested from Defendants an electronic copy of Illinois's statewide voter registration list ("Voter File") pursuant to the NVRA's Public Disclosure Provision. Undisputed Material Fact ("UMF") ¶ 7. It is undisputed that the Voter File is used for and reflects list maintenance activities. UMF ¶¶ 20-22. It is also undisputed that Defendants have not provided the Foundation with the Voter File. UMF ¶¶ 17-18. *See Ill. Conservative Union*, 2021 U.S. Dist. LEXIS 102543, at *10 (holding that defendants' failure to provide "meaningful access to voter records in violation of the NVRA…constitutes a sufficiently particularized injury in fact for standing purposes.") These facts are not genuinely in dispute.

**B. Defendants' Denial of Access to the Voter File Violates the NVRA.**

     **1. The Voter File Is Subject to Public Disclosure Under the Plain and Unambiguous Terms of the NVRA.**

On its face, the NVRA's Public Disclosure Provision is a broad mandate, requiring public disclosure of "**all records** concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1) (emphasis added). The Voter File—a record that captures and reflects the most current maintenance of all voter record information—falls squarely within the scope of this disclosure command.

"The starting point in statutory interpretation is the language [of the statute] itself." *Ardestani v. INS*, 502 U.S. 129, 135 (1991) (citations and quotations omitted). The Supreme Court instructs that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Id*. at 254 (citations and quotations omitted). The text of the Public Disclosure Provision is unambiguous: "Each state … shall make available for public inspection ... *all records* concerning the implementation of *programs and activities* conducted for the purpose of ensuring the *accuracy and currency* of official lists of eligible voters." 52 U.S.C. § 20507(i)(1) (emphasis added). All records concerning activities conducted by Illinois to make voter registration information current and accurate are subject to public disclosure, period. The records the Foundation is seeking are records subject to inspection and disclosure by the plain text of the statute.

###### a. The Voter File is a "Record."

Defendants cannot genuinely dispute that the Voter File is a "record" under the NVRA's Public Disclosure Provision. Because the NVRA does not define "record," the court considers the common and ordinary meaning of the term. *See Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1335 (N.D. Ga. 2016) (interpreting meaning of "record" in NVRA). The Merriam-Webster Dictionary defines record as "a body of known or recorded facts about something or someone" and "a collection of related items of information (as in a database) treated as a unit."[3] The Voter File is both a "body of known [and] recorded facts" about each eligible voter and "a collection of related items of information" about each eligible voter "treated as a unit." The Voter File is therefore plainly a "record" under the plain meaning of the term.

It makes no difference that the Voter File is generated and distributed in an electronic format because the NVRA requires disclosure of "all records," not just physical records. 52 U.S.C. § 20507(i)(1). As the Northern District of Georgia prudently recognized, "Interpreting 'records' to exclude information contained within electronic databases … would allow States to circumvent their NVRA disclosure obligations simply by choosing to store information in a particular manner. Given the ubiquity and ease of electronic storage, this would effectively render Section 8(i) a nullity." *Project Vote, Inc.*, 208 F. Supp. 3d at 1336.

###### b. The Voter File "Concern[s]" the "Implementation of Programs and Activities Conducted for the Purpose of Ensuring the Accuracy and Currency of Official Lists of Eligible Voters[.]"

Defendants acknowledge that elections use the centralized statewide voter registration list to conduct voter list maintenance. UMF ¶ 20. According to Defendant Thomas, local election officials use the centralized statewide voter list for the following purposes:

---

[3] https://www.merriam-webster.com/dictionary/record (last accessed July 15, 2021).

11

> [The database is] where they're notified of potential duplicates. In some cases, they're notified of potential deceased records, matches for potential deceased. They're notified of potential transfers from one jurisdiction to another. And they're notified of military and overseas, the MOVE Act applications. It's where they get a notification and they can interact with the database directly through the web portal.

Exhibit D at 20:21-21:5. Further, according to Defendant Thomas, State election officials use the Database for various activities to maintain the list of registered voters.

> We receive a monthly file from [the Department of Health] for deceased individuals and the system makes potential matches and displays those potential matches to the election authorities for action or not. The -- We also have interaction with -- for validation of records with the Secretary of State's Office as well as the Social Security Administration where jurisdictions are notified of potential discrepancies in records. We have – Let's see. And then we're also a member of the Electronic Registration Information Center, where information is provided to ERIC and then they provide reports back, and information on those reports are provided to the election authorities through the web portal.

Exhibit D at 21:18-22:7.

Interpreting the plain meaning of the NVRA's terms, the Eastern District of Virginia concluded that "a program or activity covered by the Public Disclosure Provision is one conducted to ensure that the state is keeping a 'most recent' and errorless account of which persons are qualified or entitled to vote within the state." *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 706 (E.D. Va. 2010); *see also True the Vote*, 43 F. Supp. 3d at 719-20 ("A list of voters is 'accurate' if it is 'free from error or defect' and it is 'current' if it is 'most recent.'") (Citations omitted).

The remaining question for the Court is whether the Voter File "concern[s]" Illinois's voter list maintenance programs. 52 U.S.C. § 20507(i)(1). The common and ordinary meaning of the word "concern" is "to relate to." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/concerns?src=search-dict-hed (last accessed July 15, 2021). The Voter File plainly relates to Illinois' voter list maintenance programs in at least two ways.

### i. The Voter File Reflects and Is the End-Product of Illinois's Voter List Maintenance Activities.

The Voter File contains voter record information for each registered voter who is eligible to vote in Illinois as of the date the file is generated. UMF ¶ 4. The Voter File is the culmination and end product of the implementation of Illinois's voter list maintenance activities. The Voter File squarely "concerns" Illinois' voter list maintenance activities and therefore falls within the scope of the NVRA's Public Disclosure Provision.

The following hypothetical—proposed to Defendant Hobson in deposition—reinforces this conclusion:

13· · · · · · ·Okay.· Let's say that today your office

14· ·generated a centralized statewide voter registration

15· ·list for an entity and on that file is a person named

16· ·Jane Doe.· And it says -- according to that list that's

17· ·been generated, it states that she's registered at 1234

18· ·Main Street.· You following me so far?

19· · · · A.· ·I got you so far.

20· · · · Q.· ·Okay.· A week later, Jane Doe gets married and

21· ·she decides to legally change her name and move.· Jane

22· ·Doe then submits a new voter registration application

23· ·under her new name of Smith, using her new address of

24· ·1234 State Street.· Is it correct that that database

·1· ·would then be used -- The database would then be updated

·2· ·with her new last name and new address, correct?

·3· · · · A.· ·Correct.

13

·4· · · · Q.· ·Then, let's say, the next week you again

·5· ·access the database to generate the centralized

·6· ·statewide voter registration list. Would the new copy

·7· ·of the list that you just generated now list her new

·8· ·last name and her new address?

·9· · · · A.· ·That is correct.

10· · · · Q.· ·So is it correct to say that when changes and

11· ·updates are made to an individual voter registration

12· ·record, like with our hypothetical Jane Doe, those

13· ·updates are reflected on the centralized statewide

14· ·voting registration list the next time it is generated?

15· · · · A.· ·That is correct.

Exhibit B at 58:13-59:15. The Voter File reflects—and therefore "concern[s]" and "relates to"—Illinois' activities conducted to keep each eligible voter's official information current and accurate—here, a change to the voter's name and address. Many analogous list maintenance data points also exist in the Voter File–registration addresses, dates of last vote, and more. UMF ¶ 19. There is no credible argument to the contrary.

> ### ii.  The Voter File Is a Compilation of Voter Registration Records, Which Illinois Uses to Determine Eligibility to Vote.

The Voter File is generated from the Database and is the official list of eligible voters at the time it is generated. UMF ¶ 4. Illinois law requires that "[t]he registration information maintained by each election authority shall be synchronized with that authority's information on the statewide list at least once every 24 hours." 10 ILCS 5/1A-25(4). When generated, then, the

14

Voter File is simply a compilation of the official and most recent voter registration records of all eligible registrants.

*Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019) resolved the same question at issue here. In *Judicial Watch*, the court granted summary judgment, holding a list of Maryland's registered voters is a "record" covered by the NVRA's Public Disclosure Provision. Plaintiffs sought production of the voter registration list for Montgomery County, Maryland. *Judicial Watch*, 399 F. Supp. 3d at 434-445. The court explained,

> In Maryland, State and local officials rely on voter registrations to register new voters and to remove ineligible voters, thereby "'ensuring the accuracy and currency of official lists of eligible voters.'" [*Project Vote / Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012)] (internal citation omitted). And, the voter registrations are clearly records that concern the implementation of the program and activity of maintaining accurate and current eligible voter lists. After all, they contain the information on which Maryland election officials rely to monitor, track, and determine voter eligibility.

*Judicial Watch*, 399 F. Supp. 3d at 439. Because "a voter list is simply a pared down compilation of voter registrations," *id*. at 440, the court reasoned, it is likewise a "record" covered by the NVRA's Public Disclosure Provision, *id*. at 440-442.[4]

The Voter File is likewise a "compilation of voter registrations." *Id*. at 440. Indeed, the information contained in the Voter File is pulled directly from the official statewide database, UMF ¶ 4, the information that election officials endeavor to keep current and "on which…election officials rely to monitor, track, and determine voter eligibility." *Judicial Watch*, 399 F. Supp. 3d at 439. The Voter File is likewise a record covered by the NVRA.

---

[4] The court ultimately concluded that the NVRA also requires disclosure of birthdate information. *Judicial Watch, Inc. v. Lamone*, 455 F. Supp. 3d 209 (D. Md. 2020).

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014) also supports the

Foundation. In that case, the plaintiff sought a "'a complete list of all Mississippi voters [in] all

status categories'" *Id*. at 723. The court observed,

> Mississippi has an electronic election recordkeeping system, SEMS, that contains
> its Voter Roll information. The Voter Roll is created from data in SEMS and is
> maintained by the State. Counties receive voter registration applications from
> individual registrants and must scan the applications and other pertinent registration
> documentation into SEMS. …
>
> The Court likewise concludes that the Voter Roll is a "record" and is the "official
> list[] of eligible voters" under the NVRA Public Disclosure Provision. The process
> of compiling, maintaining, and reviewing the voter roll is a program or activity
> performed by Mississippi election officials that ensures the official roll is properly
> maintained to be accurate and current.

*Id*.

The same is true here. Illinois has a centralized database of records. UMF ¶¶ 2-3. The

Voter File is created from that database. UMF ¶ 4. The Voter File contains various voter record

information stored in the statewide database for each eligible registrant, including name and

address, Exhibit C at 11:23-12:6, and is a list of all eligible voters in Illinois at the time it is

generated. UMF ¶ 4. As in Mississippi, "[t]he process of compiling, maintaining, and reviewing"

the Voter File is an activity performed by Illinois election officials "that ensures the official roll

is properly maintained to be accurate and current." *True the Vote*, 43 F. Supp. 3d at 723. The

Voter File is a "record" of that activity and thus covered by the NVRA.

### 2.  The Vast Majority of States Comply with the NVRA.

Illinois is one of very few states that conceals its Voter File from the public, in

contravention of the NVRA's plain text. The following states make the information available to

the public:

1.      Alabama (Ala. Code § 17-4-38)
2.      Alaska (Alaska Stat §15.07.127)

16

3.      Arizona (Ariz. Rev. Stat § 16-168)
4.      Arkansas (Ark. Code Ann. § 7-5-109)
5.      California (Cal. Elec. Code § 2184 *et seq*., § 2194, § 2166, § 2166.5, § 2166.7)
6.      Colorado (Colo. Rev. Stat. § 1-2-302, § 24-30-2108, § 1-2-227)
7.      Connecticut (Conn. Gen. Stat. § 9-35, § 9-36, § 9-23h, § 54-240g)
8.      Delaware (Del. Code Ann. tit. 15, § 304, § 1305, § 1303)
9.      District of Columbia (3 DCMR § 510)
10.     Florida (Fla. Stat. Ann. § 97.0585, § 741.406)
11.     Georgia (Ga. Code Ann., § 21-2-225, § 21-2-225.1)
12.     Hawaii (Haw. Rev. Stat. Ann. § 11-97, § 11-14, § 11-14.5)
13.     Idaho (Idaho Code § 34-437, § 34-437A, § 19-5706)
14.     Iowa (Iowa Code § 48A.38-39, § 9E.6)
15.     Kansas (Kan. Stat. Ann. § 25-2320, § 25-2320a, § 25-2309, § 75-451)
16.     Kentucky (Ky. Rev. Stat. § 116.095, § 117.025, § 14.304)
17.     Louisiana (La. Rev. Stat. Ann. 18:154)
18.     Massachusetts (Mass. Ann. Laws ch. 51, § 47C, § 37, § 44)
19.     Michigan (Mich. Comp. Laws Serv. 168.522, 168.509gg)
20.     Mississippi (Miss. Admin. Code 1-10-7.2, Miss. Code Ann. § 99-47-1)
21.     Missouri (Mo. Rev. Stat. § 115.157-158)
22.     Montana (Mont. Code Ann. 13-2-115, 13-2-122, Mont. Admin. R. 44.3.1102)
23.     Nebraska (Neb. Rev. St. § 32-330-312)
24.     Nevada (Nev. Rev. Stat. Ann. § 293.440, 293.558)
25.     New Jersey (N.J. Stat.19:31-18.1, 47:1A-5, 47:4-2)
26.     New Mexico (N.M. Stat. Ann. § 1-4-5.5, § 1-4-50)
27.     New York (N.Y. Elec. Law § 3-103, § 5-508, § 5-602 *et seq*.)
28.     North Carolina (NC Gen Stat. § 163A-871)
29.     Ohio (Ohio Rev. Code Ann. § 3503.13, § 3503.15)
30.     Oklahoma (Okla. Stat. tit. 26, § 7-103.2)
31.     Oregon (Or. Rev. Stat. Ann. § 247.940, § 247.945, § 247.955)
32.     Pennsylvania (25 Pa. Cons. Stat. Ann. § 1207, § 1403 *et seq*.)
33.     Rhode Island (RI Gen L § 17-9.1-15, § 17-9.1-6)
34.     South Dakota (S.D. Codified Laws § 12-4-9, § 12-4-41)
35.     Tennessee (Tenn. Code Ann. § 2-2-138, § 2-2-127)
36.     Texas (Tex. Elec. Code § 18.005, § 18.008, § 18.009, § 13.004, § 18.0051)
37.     Utah (Utah Code Ann. § 20A-2-104)
38.     Vermont (Vt. Stat. Ann. tit. 17, § 2154, § 2141; Vt. Stat. Ann. tit. 15, § 1158)
39.     Virginia (Va. Code Ann. § 24.2-406, § 24.2-418, § 24.2-444)
40.     Washington state (Wash. Rev. Code Ann. 29A.40.130, 29A.08.720, 42.56.230)
41.     West Virginia (W. Va. Code, § 3-2-30; § 48-28A-101)
42.     Wisconsin (Wis. Stat. Ann. § 6.36, 6.47)
43.     Wyoming (Wyo. Stat. § 22-2-113)

In addition to the present litigation, the Foundation has filed litigation against two other

states (Maine and Maryland) for violating the NVRA by not disclosing list maintenance records.

On September 2, 2020, a settlement agreement was successfully reached with Maryland giving the Foundation access to the state's voter rolls and list maintenance records. *Public Interest Legal Foundation v. Lamone*, Case No. 1:19-cv-03564 (D. Md.); *see also* "Maryland Election Board Shares Voter Roll Data to Settle PILF Lawsuit," Sept. 2, 2020, *available at* https://publicinterestlegal.org/press/maryland-election-board-shares-voter-roll-data-to-settle-pilf-lawsuit/. The Foundation has filed a motion for summary judgment in the case against Maine, which is currently pending. *Public Interest Legal Foundation v. Bellows*, Case No. 1:20-cv-00061 (D. Me.). The Foundation is unaware of any Court that has upheld a restriction like Illinois's on voter list maintenance data.[5]

### 3. Disclosure of the Voter File is Consistent with Congress's Intent.

To find that the Voter File is not within the scope of the NVRA is inconsistent with the explicit intent of Congress. The NVRA was enacted for four purposes, including "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(3)-(4). The NVRA's Public Disclosure Provision reflects

---

[5] Several courts have struck as *unconstitutional* voter-roll-access laws that discriminate against certain persons and entities. *See, e.g.*, *Providence Journal Co. v. Farmer*, No. 85-0602B, 1986 U.S. Dist. LEXIS 31325, at *9, *11 (D.R.I. July 25, 1986) ("Rhode Island General Law section 17-6-5 abridges the right of access to public records by excluding the public from total access to the magnetic tape of the central voter registry. … [T]he statute is a denial of First and Fourteenth Amendment protections and unconstitutional."); *Donrey Media Grp. v. Ikeda*, 959 F. Supp. 1280, 1287 (D. Haw. 1996) ("The statute, as drafted, provides dangerous precedent by allowing the state government and local municipalities to control the type of access to voter registration records that will be permitted to the press while permitting record access to political parties and certain other organizations. This clearly is an intolerable infringement upon the public's right to know and denies a means of public access to important information relative to the integrity and honesty of the elections process."); *Libertarian Party of Ind. v. Marion Cty. Bd. of Voter Registration*, 778 F. Supp. 1458, 1465 (S.D. Ind. 1991) ("In light of the court's ruling that IC 3-7-7-10, as applied by the Voter Registration Board to the plaintiffs in this case, violates the plaintiffs' equal protection rights, the county Defendants are hereby ordered to provide copies of Registration Lists to the plaintiff New Alliance and Libertarian parties in the same forms and manners and on the same terms as such lists are distributed to major political parties[.]").

18

Congressional intent by allowing the public to monitor the activities of government as they

concern the right to vote:

> [The NVRA's Public Disclosure Provision is] available to **any member of the public** … and convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs. [52 U.S.C. § 20507(i)]. Accordingly, **election officials must provide full public access to all records related to their list maintenance activities, including their voter rolls.** *Id.* This mandatory public inspection right is designed to preserve the right to vote and ensure that election officials are complying with the NVRA. *Project Vote v. Long,* 682 F.3d. 331, 335 (4th Cir. 2012).

*Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *12-13 (S.D. Fla. Mar.

30, 2018) (emphasis added). Indeed, Congress made *all* list maintenance records subject to

public inspection precisely so that the public can enjoy a transparent election process and assess

compliance with federal laws. *Ass'n of Cmty. Orgs. for Reform Now v. Fowler,* 178 F.3d 350,

364 (5th Cir. 1999) (private-right-of action meant to "encourage enforcement by so-called

'private attorneys general'" (quoting *Bennett v. Spear*, 520 U.S. 154, 157 (1997)).

### C. Illinois Law Is Preempted and Superseded by the NVRA.

Illinois's exemptions conflict with federal law. "[T]he disclosure of any portion of the

centralized statewide voter registration list to any person or entity other than to a State or local

political committee and other than to a governmental entity for a governmental purpose is

specifically prohibited…" 10 Ill. Comp. Stat. Ann. 5/1A-25. No other individual and entity may

inspect, purchase, or otherwise receive the Voter File. *See id.*; UMF ¶ 5. In other words, this

purportedly confidential information can nevertheless be disclosed to State or local political

committees who then use the information to contact—or in the eyes of some, bother—the

registrant directly.

Illinois law is preempted, superseded and unenforceable under Article VI, Clause 2 of the

United States Constitution (the Supremacy Clause), Article I, Section 4, Clause I of the United

19

States Constitution (the Elections Clause), and the Supreme Court's decision in *Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1. In *Inter Tribal*, the Supreme Court held in unambiguous terms that the NVRA is superior to any conflicting state laws. In such situations, "the state law, 'so far as the conflict extends, ceases to be operative.'" *Inter Tribal*, 570 U.S. at 9 (quoting *Ex parte Siebold*, 100 U. S. 371, 384 (1880)). According to the Court:

> When Congress legislates with respect to the "Times, Places and Manner" of holding congressional elections, it *necessarily* displaces some element of a pre-existing legal regime erected by the States. Because the power the Elections Clause confers is none other than the power to pre-empt, the reasonable assumption is that the statutory text accurately communicates the scope of Congress's pre-emptive intent…. In sum, there is no compelling reason not to read Elections Clause legislation simply to mean what it says.

*Id*. at 14-15.

In fact, the Seventh Circuit has already answered in the affirmative the question of whether the NVRA is superior to conflicting Illinois law. *ACORN v. Edgar*, 56 F.3d 791, 795 (7th Cir. 1995). In *ACORN*, Illinois argued that "[t]he 'motor voter' law…imposes without the state's consent new federal responsibilities that will require changes in state laws governing voter registration; imposes heavy unreimbursed costs on the state; and makes it more difficult for the state to fight vote fraud." *Id*. at 793. The Seventh Circuit explained,

> A state might already have had exactly the same provisions in its registration law (a law, let us say, equally applicable to state and federal elections) as are found in the "motor voter" law, and then that law would not alter state law. But if, as is true in Illinois, the state law regulating registration for federal elections differs from the "motor voter" law, the latter does alter state law. This seems, however, to be exactly what is contemplated by Article I section 4.

*ACORN*, 56 F.3d at 795. In conclusion, the Seventh Circuit affirmed the district court's finding "that all provisions of Illinois law that conflict with the [NVRA] are invalid." *Id.* at 797.

The relevant statutory text of the NVRA says that states must make available for inspection "all records" of their voter list maintenance programs.[6] 52 U.S.C. § 20507(i)(1). That requirement says plainly what it says —"all records." There are no safe harbors granted to records exempted or made confidential under state law, particularly when the same records are readily made available to people who expressly aim to contact those registrants. Under *Inter Tribal* and *ACORN*, Illinois law is therefore invalid and unenforceable. *See also Project Vote/Voting for Am., Inc. v. Long*, 813 F.Supp.2d 738, 743 (E.D. Va. 2011) ("[T]o the extent that any Virginia law, rule, or regulation forecloses disclosure of completed voter registration applications with the voters' SSNs redacted, the court FINDS that it is preempted by the NVRA.").

*Judicial Watch* is again instructive. The court in *Judicial Watch* also held that the NVRA's Public Disclosure Provision preempts a Maryland law that required an applicant requesting a voter registration list to be a Maryland registered voter. *Judicial Watch*, 399 F. Supp. 3d at 443- 445. After reviewing various types of preemption, the court found that limiting access to the voter registration lists to Maryland registrants "is an obstacle to the accomplishment of the NVRA's purposes,"*id*. at 445—namely, "protect[ing] the integrity of the electoral process," 52 U.S.C. § 20501(b)(3); and "ensur[ing] that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(4). The court specifically noted that "Section 8(i) of the NVRA provides for the disclosure of voter registrations in order to 'assist the identification of both error and fraud in the preparation and maintenance of voter rolls.'" *Judicial Watch*, 399 F. Supp. 3d at 445 (quoting *Project Vote / Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012)). By limiting that disclosure to Maryland voters, Maryland law, "exclude[ed]

---

[6] Congress explicitly exempted only two specific types of records. *See* 52 U.S.C. § 20507(i)(1).

organizations and citizens of other states from identifying error and fraud," contrary to the NVRA's purposes. *Id*. The court accordingly held, "It follows that the State law is preempted in so far as it allows only Maryland registered voters to access voter registration lists." *Judicial Watch*, 399 F. Supp. 3d at 445.

Illinois law likewise limits disclosure of its eligible voter list—the Voter File—to certain preferred entities. *See* 10 Ill. Comp. Stat. Ann. 5/1A-25. It is therefore subject to (1) ordinary conflict preemption doctrine because "compliance with both federal and state regulations is a physical impossibility," *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (citations omitted), or (2) as in *Judicial Watch*, obstacle preemption, because Illinois law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" 399 F. Supp. 3d at 444 (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995).) Under either, doctrine, Illinois law is preempted and cannot be applied to prevent disclosure to the Foundation.

## **Conclusion**

The NVRA means what it says—"all records" concerning voter list maintenance are subject to public inspection and reproduction. For the reasons explained herein, that broad mandate includes Illinois's Voter File. Because there are no material facts genuinely in dispute, the Foundation is entitled to judgment as a matter of law.

Dated: July 15, 2021.

Respectfully submitted,

 /s/ Kaylan L. Phillips
Kaylan L. Phillips
Public Interest Legal Foundation, Inc.
32 E. Washington St., Ste. 1675
Indianapolis, IN 46204
Tel: (317) 203-5599
Fax: (888) 815-5641
kphillips@PublicInterestLegal.org

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing memorandum complies with Local Rule 7.1(B)(4)(b). As described in Local Rule 7.1(D)(5), the argument portion of the brief contains 4,923 words as computed by the word-count feature of Microsoft Office Word.

     /s/ Kaylan L. Phillips
Kaylan L. Phillips
Counsel for Plaintiff
kphillips@PublicInterestLegal.org

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2021, I electronically filed the foregoing using the

Court's ECF system, which will serve notice on all parties.

/s/ Kaylan L. Phillips
Kaylan L. Phillips
Counsel for Plaintiff
kphillips@PublicInterestLegal.org