**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT SPRINGFIELD, ILLINOIS**

| | |
|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION, INC.** | |
| *Plaintiff*, | |
| *v.* | |
| **STEVE SANDVOSS**, in his official capacity as Executive Director of the Illinois State Board of Elections, **KYLE THOMAS,** in his official capacity as Director of Voting Systems and Registration, **CHERYL HOBSON** in her official capacity as Deputy Director of Voting and Registration, and the **ILLINOIS STATE BOARD OF ELECTIONS**. | Case No. 20-CV-3190-SEM-TSH |
| *Defendants*. | |

**Plaintiff Public Interest Legal Foundation's
Response to Defendants' Motion for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1(D), Plaintiff Public Interest Legal Foundation ("Foundation"), files this response to Defendants' Motion for Summary Judgment (Doc. 29.)  For the reasons that follow and those in the Foundation's Motion for Summary Judgment (Doc. 22), judgment should not enter for the Defendants but should enter for the Foundation.

**Introduction**

Congress made all voter list maintenance records subject to public inspection so that election administration is transparent. That cannot happen in Illinois because Defendants are concealing list maintenance records from public inspection. This case concerns the Foundation's request for perhaps the most fundamental example of such a record—the list of eligible voters itself with affiliated data, or as it is known in Illinois, the centralized statewide voter registration list (hereafter, the "Voter File"). It is undisputed that the Foundation requested to inspect the

1

Voter File. It is undisputed that Defendants failed to allow the Foundation to access and reproduce the Voter File. While trying to prove their entitlement to judgment, Defendants make the Foundation's case. Defendants cannot overcome the plain and unambiguous language of the NVRA or its preemptive effect. The Defendants' Motion should be denied, and judgment should therefore enter in favor of the Foundation that Defendants are in violation of the NVRA and must allow the Foundation to access and reproduce the Voter File.

### Response to Undisputed Material Facts

*1. Undisputed Material Facts*

No. 1. Undisputed. *See* Foundation's Statement of Undisputed Facts ¶ 7 ("Foundation's UMF"). (Doc. 22 at 11.)

No. 2. Undisputed. *See* Foundation's UMF at 11. (Doc. 22 at 11-12.)

No. 3. Undisputed. *See* Foundation's UMF at 11. (Doc. 22 at 11-12.)

No. 5. It is undisputed that, on January 31, 2020, counsel for the Foundation went to the State Board of Election's office in Springfield, Illinois to inspect the centralized statewide voter registration list. *See* Foundation's UMF at 13. (Doc. 22 at 12.)

No. 6. Undisputed.

No. 7. Undisputed.

No. 8. Undisputed. *See* Foundation's UMF at 15. (Doc. 22 at 12.)

No. 9. Undisputed. *See* Foundation's UMF at 15. (Doc. 22 at 12.)

No. 10. Undisputed. *See* Foundation's UMF at 14. (Doc. 22 at 12.)

No. 11. Undisputed. *See* Foundation's UMF at 14. (Doc. 22 at 12.)

No. 12. Undisputed. *See* Foundation's UMF at 21. (Doc. 22 at 13-14.)

No. 14. Undisputed. *See* Foundation's UMF at 22. (Doc. 22 at 14.)

No. 15. Undisputed.

No. 16. Undisputed.

No. 18. Undisputed.

No. 19. Undisputed.

No. 21. Undisputed.

No. 22. Undisputed.

No. 23. Undisputed.

*2. Disputed Material Facts*

No. 4. Material but is disputed. This statement incorrectly implies that the Foundation did not specifically request Illinois's voter list until "subsequent correspondence." Rather, the Foundation specifically requested "an electronic copy of the Illinois statewide voter registration list" in its initial correspondence dated October 16, 2019. *See* Doc. 1-4 and Foundation's UMF at 7. (Doc. 22 at 11.)

No. 13. Undisputed that local election authorities perform list maintenance activities but disputed that *only* local election authorities perform list maintenance activities. *See* Foundation's UMF at 20. (Doc. 22 at 13.)

*3. Disputed Immaterial Facts*

*4. Undisputed Immaterial Facts*

No. 17. Immaterial and undisputed for the purposes of this response. Whether Defendant Hobson has authority to enforce provisions of the National Voter Registration Act is not material to the issues presented here.

No. 20. Immaterial and undisputed for the purposes of this response. Whether Defendant

Thomas has authority to enforce provisions of the National Voter Registration Act is not

material to the issues presented here.

*5. Additional Material Facts*

1. Section 8(i)(1) of the National Voter Registration Act of 1993 ("NVRA") provides,

   Each State shall maintain for at least 2 years and shall make available for public
   inspection and, where available, photocopying at a reasonable cost, all records
   concerning the implementation of programs and activities conducted for the
   purpose of ensuring the accuracy and currency of official lists of eligible voters,
   except to the extent that such records relate to a declination to register to vote or to
   the identity of a voter registration agency through which any particular voter is
   registered.

   52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision").

2. 10 ILCS 5/1A-25 sets forth, "The centralized statewide voter registration list required by

Title III, Subtitle A, Section 303 of the Help America Vote Act of 2002 shall be created and

maintained by the State Board of Elections as provided in this Section." *See also* Doc. 22-1 at

Response to Request for Admission No. 4; Doc. 1 at ¶ 34, Doc. 8 at ¶ 34; 22-2 at 7:22-9:2.

3. The centralized statewide voter registration list is "generally referred to as the statewide

registration database. The information is compiled from individual registration databases of each

individual election authority across the state." Doc 22-3 at 10:22-11:5, 38:2-6.

4. The Voter File is generated from the Database and is the official list of eligible voters at

the time it is generated. *See* Doc. 22-2 at 57:1-20. Doc. 22-3 at 29:22-30:12.

5. Illinois permits only certain entities to obtain the Voter File. 10 ILCS 5/1A-25; *see also*

Doc. 22-2 at 25:3-19.

6. On October 16, 2019, the Foundation sent a letter by certified mail and email to the

Executive Director of the Illinois State Board of Elections requesting an electronic copy of

Illinois's statewide voter registration list pursuant to the NVRA's Public Disclosure Provision. Doc. 1 at ¶ 18, Doc. 8 at ¶ 18. The Letter was filed in this case as Docket Entry 1-4 (hereafter, the "Request Letter").

7.     The Foundation's Request letter acknowledged that 10 ILCS 5/1A-25(4) appears to prohibit the Foundation from receiving the Voter File and limited the Foundation to only view certain data at the State Board of Elections' office. Doc. 1 at ¶ 19, Doc. 8 at ¶ 19; Doc. 1-4 at 1.

8.     The Foundation's Request Letter also notified the Secretary that Illinois law violates the NVRA because it prohibits disclosure of the Voter File. Doc. 1 at ¶ 20, Doc. 8 at ¶ 20; Doc. 1-4 at 1.

9.     Defendants have not allowed the Foundation to view the Voter File. Doc. 22-2 at 35:21-36:16, 38:13-39:17, 40:1-5; Doc. 22-3 at 9:22-10:17, 21:21-24, 40:19-41:5.

10.    Defendants have not provided the Foundation with a copy of the Voter File. Doc. 22-2 at 40:6-9; Doc. 22-3 at 21:21-24.

11.    The following voter record information is maintained in the Database for each registered voter:

a.    Name. Doc. 22-2 at 50:9-11.

b.    Residential address. Doc. 22-2 at 50:12-14.

c.    Mailing address. Doc. 22-2 at 50:15-17.

d.    Complete date of birth. Doc. 22-2 at 50:18-19.

e.    Voter status. Doc. 22-2 at 51:12-14.

f.    Date of registration. Doc. 22-2 at 50:20-22.

g.    Date of updates or changes to voter record information. Doc. 22-2 at 51:9-11.

h.    Voter participation history. Doc. 22-2 at 50:23-51:1.

*See also* Doc. 22-4 at 26:15-28:19; Doc. 22-3 at 11:23-12:6.

12. Election officials in Illinois, including Defendants, use the centralized statewide voter registration list to conduct voter list maintenance. Doc. 22-2 at 17:5-20:6; 20:18-21:22; 56:20-24; Doc. 22-3 at 22:13-23:12, 26:16-28:9, 31:7-32:5.

## Argument

For nearly two years, the Foundation has sought to inspect an electronic copy of Illinois's statewide voter registration list ("Voter File") pursuant to the NVRA's Public Disclosure Provision. Defendants do not dispute that they refused to provide the Voter File to the Foundation. Defendants' Undisputed Material Facts ¶ 7 ("Defendants' UMF") (Doc. 30 at 5); Foundation's Statement of Undisputed Facts ¶¶ 17-18 ("Foundation's UMF") (Doc. 22 at 12-13.) Defendants do not dispute that the Voter File is used for and reflects list maintenance activities. *See* Defendants' UMF ¶¶ 12, 14 (Doc. 30 at 6); Foundation's UMF ¶¶ 20-22 (Doc. 22 at 13-14). Defendants admit that the Voter List is "the final result of these [list maintenance] programs." Doc. 30 at 14.

According to the Defendants, "[t]his Court's analysis of Plaintiff's claim should begin and end with a review of the plain language of Section 8(i) of the NVRA." (Doc. 30 at 8.) On that point, the Foundation agrees. The plain language of the NVRA supports a finding for the Foundation. Every federal court that has confronted the question is in accord. *See Ill. Conservative Union v. Illinois*, No. 20-cv-05542, 2021 U.S. Dist. LEXIS 102543, at *14 (N.D. Ill. June 1, 2021) ("the courts that have addressed the question have uniformly reached the conclusion that the NVRA's reference to 'records' in Section 8(i) includes voter list data."). Therefore, Defendants are not entitled to summary judgment and judgment should enter for the Foundation.

6

I.      **The Voter File Is Subject to Public Disclosure Under the Plain and Unambiguous Terms of the NVRA.**

As evidenced in its Motion for Summary Judgment, the Foundation agrees with the Defendants on the guidelines for how to interpret a statute. (*See* Doc. 22 at 10.) When it comes to applying those guidelines to the NVRA, the parties could not disagree more. Defendants gloss over the plain-meaning analysis and rest their case on subordinate cannons that this Court need not consider in light of the statute's unambiguous text.

A.      **The Voter File is a "Record."**

The text of the Public Disclosure Provision is unambiguous: "Each state … shall make available for public inspection ... *all records* concerning the implementation of *programs and activities* conducted for the purpose of ensuring the *accuracy and currency* of official lists of eligible voters." 52 U.S.C. § 20507(i)(1) (emphasis added). Defendants assert that the Voter File is not encompassed by this mandate because Congress refers to "official lists of eligible voters" elsewhere in the statute and yet did not "explicitly" include it in the Public Disclosure Provision. (Doc. 30 at 10.) Defendants are putting the cart before the horse. "The starting point in statutory interpretation is the language [of the statute] itself." *Ardestani v. INS*, 502 U.S. 129, 135 (1991) (citations and quotations omitted). "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (citations and quotations omitted). The plain-meaning analysis does not consider what Congress said elsewhere. It considers what Congress said in the relevant text. The Voter File is within the scope of the relevant plain language.

Regardless, the very premise of Defendants' argument—that Congress included or excluded certain language—is false. As Defendants admit, the phrase "'official list[s] of [eligible] voters' also appears in the very *sentence* at issue here." (Doc. 30 at 10 (citing 52 U.S.C.

§ 20507(i).) Congress's use of the phrase "official list of eligible voters" elsewhere in Section 8 indicates nothing about the scope of the Public Records Provision. With none of those other uses was Congress attempting to define the scope of anything, much less the scope of public records. The maxim on which Defendants rely is simply irrelevant here.[1]

Defendants' reading also violates accepted cannons by rewriting Congress's use of "all records" into "all records except only those referred to elsewhere in the statute." Under such a reading, "all records" would not include many fundamental list maintenance records, including those relating to the removal of a registrant by reason of the registrant's request, 52 U.S.C. § 20507(a)(3)(A), criminal conviction or mental incapacity, 52 U.S.C. § 20507(a)(3)(B), and death, 52 U.S.C. § 20507(a)(4)(A). Congress understood—and experience has revealed—that the number and type of list maintenance records would vary from state to state. Congress used the term "all records" precisely so that it did not have to "explicitly" list every kind of record that could conceivably exist, thereby allowing for contingencies and achieving maximum transparency.

Furthermore, Congress was clear where it wanted certain records exempted from the Public Disclosure Provision: "records relate[d] to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered." 52 U.S.C. § 20507(i)(1). Where Congress specifically exempts certain categories from otherwise applicable language, courts should not infer additional exemptions. *See Rosmer v. Pfizer, Inc.*, 272 F.3d 243, 247 (4th Cir. 2001).

---

[1] The Seventh Circuit cautions that "this maxim should not be applied mechanically." *Refined Metals Corp. v. NL Indus.*, 937 F.3d 928, 932 (7th Cir. 2019). This is one situation where such caution is eminently appropriate.

**B.    The Voter File "Concern[s]" the "Implementation of Programs and Activities Conducted for the Purpose of Ensuring the Accuracy and Currency of Official Lists of Eligible Voters[.]"**

Defendants claim that Congress did not mandate the disclosure of the Voter List "because it would defy reason and logic to do so." (Doc. 30 at 11.)  Defendants argue further that the NVRA requires only the "disclosure of records which 'relate to' or 'reference' voter registration list maintenance, but not the lists themselves." (Doc. 30 at 11.) In other words, the Foundation is entitled to separate puzzle pieces but not the finished puzzle. Not so. Defendants' preferred outcome contravenes the plain language of the statute, which is what matters here.

The Voter File contains voter record information for each registered voter who is eligible to vote in Illinois as of the date the file is generated. Foundation's UMF ¶ 4 (Doc. 22 at 10). As the Foundation explained in its Motion for Summary Judgment (Doc. 22 at 20-21), the Voter File is the culmination and end product of the implementation of Illinois's voter list maintenance activities. Defendants themselves refer to the Voter List as "the final result" of their list maintenance program. (Doc. 30 at 11.) There is no credible argument that the "final result" of Illinois's list maintenance programs does not "relate to" the implementation of those same programs. Defendants' concession effectively makes the Foundation's case.

Defendants protest that interpreting the Public Disclosure Provision to encompass the "Voter File" is "circular" and "makes little sense." (Doc. 30 at 11.) Defendants are wrong for at least two reasons. First, like the defendants in *Lamone*, Defendants are simply "quibbling over semantics." *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 442 (D. Md. 2019). The Voter File is a "compilation of voter registrations." *Lamone*, 399 F. Supp. 3d at 440. The information contained in the Voter File is pulled directly from the official statewide database, Foundation's UMF ¶ 4 (Doc. 22 at 10), the information that election officials endeavor to keep current and "on

which…election officials rely to monitor, track, and determine voter eligibility." *Lamone*, 399 F. Supp. 3d at 439. Whether viewed as one record or a compilation of ten million records, the Voter File squarely falls within the scope of the NVRA's Public Disclosure Provision.

Second, the Public Disclosure Provision contemplates more than one list of eligible voters: "official **lists** of eligible voters." 52 U.S.C. § 20507(i)(1). And in Illinois, the Voter File is just one of many official lists of eligible voters. Each local election authority (i.e., each county) maintains its own official voter file, which is made available for purchase to certain preferred entities. *See, e.g.*, 10 ILCS 5/4-8 ("Copies of the tapes, discs, or other electronic data shall be furnished by the county clerk to local political committees and governmental entities at their request and at a reasonable cost."); *see also* List of Registered Voters & Voting History, Lake County, Illinois, https://www.lakecountyil.gov//314/List-of-Registered-Voters-Voting-History (last accessed Oct. 12, 2021). The Voter File is "compiled from the voter registration data bases of each election authority in this State." 10 ILCS 5/1A-25(1); Defendants UMF ¶ 14 (Doc. 22 at 6.) The phrase "official lists of eligible voters" as used in the Public Disclosure Provision thus plausibly includes each county's official voter list. As such, there is nothing circular or nonsensical in saying that the statewide Voter File is a record "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of [each county's] official lists of eligible voters." 52 U.S.C. § 20507(i)(1).

Defendants argue further that "there is no evidence that the *voter list* is examined to ensure the accuracy of the *voter list*." (Doc. 30 at 18.) This too ignores the statute's plain language, which requires only that the Voter File have a basic relation ("concerning") to list maintenance programs, not direct use in the evaluation of eligibility. Such a basic relation is plainly established. Assuming, *arguendo*, that more is needed, there is evidence that the Voter

File (or its individual subparts) *is* examined to maintain an accurate vote roll. Illinois is a member of the Electronic Registration Information Center ("ERIC"). 10 ILCS 5/1A-45(a). ERIC "is a non-profit organization with the sole mission of assisting states to improve the accuracy of America's voter rolls and increase access to voter registration for all eligible citizens." Home, ericstates.org (last accessed Oct. 12, 2021). As a member of ERIC, Illinois transmits to ERIC "all inactive and active voter files" every sixty days. ERIC Membership Agreement at 2(a)-(b), available at https://ericstates.org/wp-content/uploads/2020/02/ERIC_Bylaws_01-2020.pdf (last accessed Oct. 12, 2021). Illinois law envisions that Illinois will share the Voter File with ERIC. 10 ILCS 5/1A-25 (prohibiting disclosure except "as may be required by an agreement the State Board of Elections has entered into with a multi-state voter registration list maintenance system"). Those files are examined by ERIC and in return Illinois "receives reports that show voters who have moved within their state, voters who have moved out of state, voters who have died, duplicate registrations in the same state and individuals who are potentially eligible to vote but are not yet registered." FAQ's, https://ericstates.org/ (last accessed Oct. 12, 2021).

There is no dispute that the Voter File is a compilation of the official and most recent voter registration records containing list maintenance records of all eligible registrants. (Doc. 22 at 10.) To disallow the Foundation from accessing "the final result" (Doc. 30 at 14) of Illinois' list maintenance activities is contrary to the purpose of the Public Disclosure Provision which "embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies," *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334-35 (4th Cir. 2012). The Voter File—a record that captures and reflects the most current maintenance

of all voter record information—falls squarely within the scope of the Public Disclosure
Provision.

## II.     Defendants' Constrained Interpretation of the NVRA Is Not Supported By Any Caselaw.

Defendants downplay authority squarely supporting the Foundation's position. (Doc. 30
at 14-18.) Yet they fail to provide any authority supporting their position that a voter list is
exempt from the NVRA. The authorities supporting the Foundation's position are well-reasoned,
persuasive, and uniform in outcome. The Foundation is not aware of *any* contrary authority on
this matter and Defendants do not provide any. As to the authorities provided by the Foundation,
Defendants' attempt to distinguish the holdings do not merit a difference in outcome here

Defendants incorrectly state that "the court's reasoning in *Lamone* was based on an issue
not presented here." (Doc. 30 at 15.)  *Lamone* involved a request for a voter list, just like this
case, under the NVRA, just like this case. The court determined that because "a voter list is
simply a pared down compilation of voter registrations," *Lamone*, 399 F. Supp. 3d at 440, the
court reasoned, it is likewise a "record" covered by the NVRA's Public Disclosure Provision, *id*.
at 440-442.

Defendants admit that the District of Maryland considered, and rejected, similar defenses
that they have raised here. (Doc. 30 at 16.)  It appears Defendants simply do not like the result of
the *Lamone* case. Be that as it may, it does not alter the fact that the *Lamone* case involved the
same legal question as is presented here and determined that the voter roll was a record to be
disclosed under the NVRA. *Lamone*, 399 F. Supp. 3d at 440-42.

Defendants also downplay a decision from the Southern District of Mississippi. There,
the federal court "conclude[d] that the Voter Roll is a 'record' and is the 'official list[] of eligible
voters' under the [] Public Disclosure Provision. The process of compiling, maintaining, and

reviewing the voter roll is a program or activity performed by…election officials that ensures the official roll is properly maintained to be accurate and current." *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 723 (S.D. Miss. 2014). Defendants claim that this "determination was based on the fact that the defendants were not contesting that the Mississippi Voter Roll was subject to disclosure under the NVRA." (Doc. 30 at 17.) But the court's finding about the voter roll was central to the records dispute in the case. The court went on to explain why the documents sought in that case, pollbooks, were not subject to mandatory disclosure under the NVRA.

> Poll books do not reflect all voters eligible to vote on election day. Poll books list only active status voters, which is a subset of all registered and potentially eligible voters. Inactive and pending status voters, for example, may still vote in an election despite not being listed in a poll book. The fact that these voters voted in the election will not be recorded in a precinct's poll book.
>
> Because poll books are only partial lists of eligible voters, they are not records that are reviewed to ensure the accuracy and currency of "official lists of eligible voters."

*True the Vote*, 43 F. Supp. 3d at 725. Fine. Plaintiff does not seek poll books; it seeks the records the court in *True the Vote* assumed *were* subject to disclosure. The fact that Defendants here dispute the Foundation's entitlement to the Voter Roll does not mean that *True the Vote* "sheds no light on the issues in this case." (Doc. 30 at 17.) Rather, it is yet another example of the authority interpreting the Public Disclosure Provision that supports the grant of summary judgment to the Foundation.

Defendants claim that the Foundation's "reliance on *Project* Vote…is misplaced" because that case concerned the disclosure of voter registration applications. (Doc. 30 at 17.)  It is true that the case did not involve voter registration lists. As the Foundation stated in its Motion, Virginia is in the majority of states that does not withhold its voter lists from the public. (Doc. 22 at 24.) Nevertheless, under the reasoning of *Project Vote*, there is no credible argument

13

that the requested Voter File is not a "record" concerning a "program" or "activity" conducted for the purpose of "ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1).[2]

## III. Illinois Law Is Preempted and Superseded by the NVRA.

Defendants argue that "the regulation of elections, even of voter registration lists, is not a 'field' that has been occupied by the federal government to the exclusion of the states." (Doc. 30 at 19.) As the Supreme Court has said, "States' role in regulating congressional elections—while weighty and worthy of respect—has always existed subject to the express qualification that it 'terminates according to federal law.' In sum, there is no compelling reason not to read Elections Clause legislation simply to mean what it says." *Inter Tribal*, 570 U.S. at 15 (citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001)). "When exercised, the action of Congress, so far as it extends and conflicts with the regulations of the State, necessarily supersedes them." *Ex parte Siebold*, 100 U.S. 371, 384 (1879). In this dispute, Congress has exercised the authority it has to mandate disclosure.

As the Foundation argued in its Motion for Summary Judgment, 10 ILCS 5/1A-25(4) is subject to ordinary conflict preemption doctrine because "compliance with both federal and state regulations is a physical impossibility," *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98

---

[2] Defendants appear to question the utility of the Foundation reviewing the Voter List, stating that "a list of registered voters does not disclose any substantive information about Illinois' list maintenance programs." (Doc. 30 at 14.)  There is no requirement that a requester explain the need for specific data to which it is entitled under the NVRA.  Even if Defendants needed to understand the purpose of the Foundation's request, which they do not, the Voter List is an important piece of evaluating Illinois' compliance with federal law. After all, as Defendants say, it is "the final result" of Illinois' list maintenance activities. (Doc. 30 at 14.) "By denying the Foundation the ability to obtain the requested voter registration list, Illinois is impairing the Foundation's ability to assess the accuracy of Illinois's voter roll and to determine whether people from other states are voting in Illinois elections and vice versa." (Doc. 1 at 9.)  Indeed, the vast majority of states already provide the public with their list of registered voters. (Doc. 22 at 23-24.)  In 2020, the Foundation used voter lists from 42 states to track voter roll deficiencies and potential problem areas across America. *See Critical Condition: American Voter Rolls Filled with Errors, Dead Voters, and Duplicate Registrations*, *available at* https://publicinterestlegal.org/reports/critical-condition-american-voter-rolls-filled-with-errors-dead-voters-and-duplicate-registrations/.

(1992) (citations omitted), or (2) as in *Judicial Watch*, obstacle preemption, because Illinois law

"stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress.'" 399 F. Supp. 3d at 444 (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287

(1995).)

Defendants argue that there is no conflict between Illinois law and the NVRA because

Illinois allows access to voter registration information on a computer terminal in Springfield,

Illinois. Defendants claim that the Foundation "fails to meet its burden of showing Illinois'

minimal limitations on access to voter registration lists are preempted by the NVRA." (Doc. 30

at 20.)  Congress states that states shall allow, "where available, photocopying at a reasonable

cost." 52 U.S.C. § 20507(i). Of course, one cannot photocopy a computer terminal, and

Defendants will not permit any other form of reproduction. 10 ILCS 5/1A-25 ("the person

viewing the list under this exception may not print, duplicate, transmit, or alter the list").

Importantly, in Defendants' own words, "[t]he actual, entire centralized statewide voter

registration list cannot be retrieved and viewed by the public on a one (sic) computer screen at

the Springfield office of the SBE." Defendants' UMF at 10 (Doc. 30 at 5.) In other words, the

"minimal limitations on access" are a complete prohibition. It is impossible to view the Voter

File even in the State Board of Election's Springfield office. It is undisputed that Defendants

have not allowed the Foundation to view the Voter File. Foundation's UMF at 17 (Doc. 22 at

12.) It is undisputed that Defendants have not allowed the Foundation to photocopy the Voter

File or otherwise provided the Foundation with a copy of the Voter File. Foundation's UMF at

18 (Doc. 22 at 13.)

The NVRA's text says that states must make available for inspection "all records" of

their voter list maintenance programs, save for two exceptions that do not apply here. 52 U.S.C.

§ 20507(i)(1). This Court must interpret that requirement to mean what it says—"all records." There are no safe harbors granted to records exempted or made confidential under state law. Defendants' effort to evade the Supremacy Clause is undermined further by the fact that the same records are readily made available to third parties who expressly aim to contact the registered voters. So much for those privacy concerns. Under *Inter Tribal*, Illinois' state law exemptions to disclosure of the same information to the Foundation is preempted by federal law and unenforceable.

## IV.   The State Board of Elections Is Not Entitled to Summary Judgment Based on Sovereign Immunity.

As Defendants acknowledge, Congress can abrogate a state's Eleventh Amendment immunity. (Doc. 30 at 21.) Congress did so in the NVRA. *See United States v. Louisiana*, 196 F. Supp. 3d 612, 657-58 (M.D. La. 2016). The text of the NVRA demonstrate Congress's intent to abrogate immunity for suits under the NVRA. First, the NVRA places multiple explicit obligations on each "State," including the duty to conduct a list maintenance program, 52 U.S.C. § 20507(a)(4), and to make list maintenance records public, 52 U.S.C. § 20507(i). Second, Congress provided an express private right of action in the NVRA that allows any aggrieved person to enforce the obligations placed on the States. 52 U.S.C. § 20510.

Last month, the Northern District of Illinois supported the Foundation's position. It considered whether the State of Illinois and the State Board of Elections had sovereign immunity against a claim under the NVRA just like that presented in this case. *See* Doc. 29, *Ill. Conservative Union v. Illinois*, No. 20-cv-05542 (Sept. 28, 2021). There, the plaintiffs made "two arguments as to why sovereign immunity does not apply to their claims, contending that Congress abrogated sovereign immunity in the NVRA and that the States 'consented to suit in

16

the plan of the Convention[.]" *Id*. at 2. The court determined that it "need only address the latter argument," the argument concerning the plan of the Convention. *Id*. at 2.

That court held that an NVRA claim may proceed against the State of Illinois and the Illinois State Board of Elections pursuant to the plan of the Convention doctrine. *Id.* at 3. According to a recent Supreme Court decision,

> [A] State may be sued if it has agreed to suit in the 'plan of the Convention,' which is shorthand for 'the structure of the original Constitution itself.' *Alden*, 527 U. S., at 728; see The Federalist No. 81, pp. 548-549 (J. Cooke ed. 1961) (A. Hamilton). The "plan of the Convention" includes certain waivers of sovereign immunity to which all States implicitly consented at the founding. *See Alden*, 527 U. S., at 755-756.

*PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2258 (2021).

States implicitly consented to waive sovereign immunity to Congress' authority pursuant to the Constitution's Election Clause contained in Article I Section 4. It reads "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law or alter such Regulations make, except as to the Places of choosing Senators." Congress passed the NVRA pursuant to power afforded it under the Elections Clause, a structure of the original Constitution itself. In addition to the NVRA abrogating immunity for suits, the State has therefore implicitly consented to a waiver of its sovereign immunity in any action brought pursuant to the Elections Clause under the "plan of the Convention."

**V.  Defendants Thomas and Hobson Are Not Entitled to Summary Judgment.**

Ironically, Defendants state that "[t]he Court should also enter summary judgment in favor of Defendants Kyle Thomas and Cheryl Hobson because they *are* proper parties to this litigation." (Doc. 30 at 23) (emphasis added.)

Defendants Thomas and Hobson are employees of the Board who have each been delegated supervisory responsibility over the state's various voter registration activities. (Doc. 30 at 23.) In their motion, Defendants admit that Thomas' and Hobson's Division is "responsible for all requests from registered political committees for computerized voter data." (Doc. 30 at 24.) They refused to provide the Foundation access to the requested records. They are responsible for the actions of their Divisions, as well as for their own failures to handle the Foundation's request in accordance with federal law.

## Conclusion

For the reasons herein and those in the Foundation's motion for summary judgment, Defendants' motion should be denied.

Dated: October 12, 2021.

Respectfully submitted,

 /s/ Kaylan L. Phillips
Kaylan L. Phillips
Public Interest Legal Foundation, Inc.
32 E. Washington St., Ste. 1675
Indianapolis, IN 46204
Tel: (317) 203-5599
Fax: (888) 815-5641
kphillips@PublicInterestLegal.org

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing memorandum complies with Local Rule 7.1(B)(4) and 7.1(D)(5) as the argument portion of the brief does not contain more than 7000 words or 45,000 characters. The argument portion of the brief contains 4,044 words as computed by the word-count feature of Microsoft Office Word.

 /s/ Kaylan L. Phillips
Kaylan L. Phillips
Counsel for Plaintiff
kphillips@PublicInterestLegal.org

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2021, I electronically filed the foregoing using the

Court's ECF system, which will serve notice on all parties.

　/s/ Kaylan L. Phillips
Kaylan L. Phillips
Counsel for Plaintiff
kphillips@PublicInterestLegal.org