## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-cv-3190** |
| | ) | |
| **BERNADETTE MATTHEWS[1], in her official capacity as Executive Director of the Illinois State Board of Elections, KYLE THOMAS, in his official capacity as Director of Voting Systems and Registration, CHERYL HOBSON, in her official capacity as Deputy Director of Voting and Registration, and the ILLINOIS STATE BOARD OF ELECTIONS,** | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>OPINION AND ORDER</u>

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

Before the Court are Plaintiff Public Interest Legal

Foundation's (the Foundation) Motion for Summary Judgment (d/e

22), and Defendants Illinois State Board of Elections' (the Board),

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Bernadette Matthews, as the current Acting Executive Director of the Illinois State Board of Elections, is automatically substituted for former Executive Director Steve Sandvoss.

Executive Director Bernadette Matthews', Director Kyle Thomas', and Deputy Director Cheryl Hobsons' (collectively, the Defendants) Motion for Summary Judgment (d/e 29).  On the undisputed material facts, the Foundation has shown that Illinois Code Chapter 10 Section5/1A-25 is preempted by the National Voter Registration Act, 52 U.S.C. § 20507(i)(1).  As a result, the Foundation has shown that it is entitled to judgment as a matter of law on the single Count alleged in the Foundation's Complaint (d/e 1).  Therefore, the Foundation's Motion for Summary Judgment (d/e 22) is GRANTED and Defendants' Motion for Summary Judgment (d/e 29) is DENIED.  Additionally, and for similar reasons, Defendants the Board's, Director Kyle Thomas', and Deputy Director Cheryl Hobson's Motion to Dismiss (d/e 9) is DENIED.

## I.    Background

### A. Undisputed Material Facts

The Court draws the following facts from the parties' Local Rule 7.1(D)(1)(b) statements of undisputed material facts.  The Court discusses any material factual disputes in its analysis.  Immaterial facts or factual disputes are omitted.  Any fact submitted by any party that was not supported by a citation to

evidence will not be considered by the Court.  <u>See</u> Civil LR 7.1(D)(2)(b)(2).  In addition, if any response to a fact failed to support each allegedly disputed fact with evidentiary documentation, that fact is deemed admitted.  <u>Id.</u>

On October 16, 2019, the Foundation sent a letter to then-Executive Director of the Board Steve Sandvoss in which the Foundation requested an electronic copy of Illinois's statewide voter registration list, a list which is required by the Help America Vote Act of 2002, codified at 42 U.S.C. § 15301 <u>et seq.</u>, and the maintenance of which Illinois has delegated to the Board, <u>see</u> 10 ILCS 5/1A-25.  The statewide voter registration list contains information compiled from individual voter registration databases of the separate election authorities across Illinois.  The Board and its employees are able to generate different reports from the statewide voter registration list, one of which is a report of all eligible voters in Illinois.

On October 29, 2019, the Foundation received a response from the Board's General Counsel denying the Foundation's request.  The denial letter stated that "Illinois law provides that 'any person may view the centralized statewide voter registration list on

a computer screen at the Springfield office of the State Board of Elections, during normal business hours other than during the 27 days before an election.' 10 ILCS 5/4-8; see also 10 ILCS 5-7, 6-35." Pl.'s Statement of Undisputed Material Facts (PSUMF) (d/e 22) ¶¶ 10–11.

On January 31, 2020, a representative from the Foundation traveled to the Board's office in Springfield, Illinois to attempt to view the statewide voter registration list.  Once there, the representative was given access to a program to search the list but was not allowed to either view the list in full or print, duplicate, or download the list.  Instead, the representative was told that the statewide voter registration list can only be "searched for a specific name or birthdate on the computer screen at the Springfield office but there is not a search option available that will retrieve the statewide voter registration list for viewing in its entirety."  Def.'s Statement of Undisputed Material Facts (DSUMF) (d/e 30) ¶ 11. The Foundation was never allowed to view or copy the statewide voter registration list in full.  The Foundation filed suit against Defendants on July 27, 2020, alleging that Defendants actions

amount to a single count of violating the National Voter Registration Act.

**B. Statutory background**

Article III, Section 5 of the Illinois Constitution establishes a State Board of Elections tasked with supervising the administration of "the registration and election laws" in Illinois.  <u>See also</u> 10 ILCS 5/1A-1.  Illinois Code Chapter 10 Section 5/1A-25 further provides the governing law for the statewide voter registration list.  Relevant to this case, Section 5/1A-25 provides,

> To protect the privacy and confidentiality of voter registration information, the disclosure of any portion of the centralized statewide voter registration list to any person or entity other than to a State or local political committee and other than to a governmental entity for a governmental purpose is specifically prohibited except as follows: (1) subject to security measures adopted by the State Board of Elections . . . any person may view the list on a computer screen at the Springfield office of the State Board of Elections, during normal business hours other than during the 27 days before an election, but the person viewing the list under this exception may not print, duplicate, transmit, or alter the list; or (2) as may be required by an agreement the State Board of Elections has entered into with a multi-state voter registration list maintenance system.

The National Voter Registration Act (NVRA), in turn, mandates certain records be kept by State election officials and be made

public "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained."  52 U.S.C. § 20501(b) (the Public Disclosure Provision).  Specifically, Public Disclosure Provision provides for the public disclosure of voter registration activities. That section states,

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1).

The Foundation alleges that Section 5/1A-25 conflicts with the NVRA to the extent that Section 5/1A-25 preempted.  Defendants disagree, arguing that the Public Disclosure Provision of the NVRA does not regulate voter registration lists, so there is no conflict between the two statutes.  Each party has moved for summary judgment on their arguments.

## II.   Legal Standard

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).
The movant bears the initial responsibility of informing the Court of
the basis for the motion and identifying the evidence the movant
believes demonstrates the absence of any genuine dispute of
material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
"[S]ummary judgment is the 'put up or shut up' moment in a
lawsuit, when a party must show what evidence it has that would
convince a trier of fact to accept its version of events."  Johnson v.
Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003).

On that evidence, the Court must determine whether a
genuine dispute of material facts exists.  A genuine dispute of
material fact exists if a reasonable trier of fact could find in favor of
the nonmoving party.  Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir.
2012).  When ruling on a motion for summary judgment, the Court
must construe facts in the light most favorable to the nonmoving
party and draw all reasonable inferences in the nonmoving party's
favor.  Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008).

The above-stated standards for summary judgment remain
unchanged when considering cross motions for summary judgment:
the Court must "construe all inferences in favor of the party against

whom the motion under consideration is made." <u>Metro. Life Ins. Co. v. Johnson</u>, 297 F.3d 558, 561–62 (7th Cir. 2002).

### III.   Analysis

**A. The Board, Director Thomas, and Deputy Director Hobson are proper parties to this suit.**

Defendants argue that the Board, Director Thomas, and Deputy Director Hobson should be granted summary judgment because they are improper parties to this suit.  The Board argues that it is an improper party under the doctrine of sovereign immunity and Defendants Thomas and Hobson argue that they are improper parties because neither is tasked with enforcing the NVRA.

### i.  The Board are not entitled to sovereign immunity here.

The Board argues that it is not subject to the Court's jurisdiction in this case and should be awarded summary judgment because the Board cannot be sued as a state agency under the Eleventh Amendment's sovereign immunity protections.  Generally, the Eleventh Amendment grants States and their agencies, such as the Board, sovereign immunity from suit in federal courts. <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 98

(1984); <u>Kroll v. Bd. of Trustees of Univ. of Illinois</u>, 934 F.2d 904, 907 (7th Cir. 1991) ("a state agency is the state for purposes of the [E]leventh [A]mendment").  However, sovereign immunity will not apply where States "unequivocally" consent to suit, <u>see Sossamon v. Texas</u>, 563 U.S. 277, 284 (2011), and where Congress has unequivocally abrogated individual States' sovereign immunity by law through a valid exercise of Congressional authority, <u>see Seminole Tribe v. Florida</u>, 517 U.S. 44, 55 (1996).

States' sovereign immunity under the Eleventh Amendment also does not apply "where there has been 'a surrender of this immunity in the plan of the Convention.'"  <u>Alden v. Maine</u>, 527 U.S. 706, 729–30 (1999) (quoting <u>Principality of Monaco v. State of Mississippi</u>, 292 U.S. 313, 323–24 (1934)).  Under the plan of the Convention doctrine, the sovereign immunity afforded to States by the Eleventh Amendment will cease where a "fundamental postulate[] implicit in the constitutional design" begins.  <u>PennEast Pipeline Co. v. New Jersey</u>, 141 S.Ct. 2244, 2258 (2021).  "The Eleventh Amendment confirmed, rather than established, sovereign immunity as a constitutional principle; it follows that the scope of the States' immunity from suit is demarcated not by the text of the

Amendment alone but by fundamental postulates implicit in the constitutional design." Alden, 527 U.S., at 729–30. In other words, "the government of the United States is invested with full and complete power to execute and carry out [the Constitution's] purposes," and when a state interferes with the exercise of such power, the state may not assert sovereign immunity from suit in federal court. PennEast, 141 S.Ct. at 2259; Garcia v. San Antonio Metro Transit Auth., 469 U.S. 528, 549 (1985) (Recognizing that states retain sovereign immunity "only to the extent that the Constitution has not divested them of their original powers and transferred those powers to the Federal Government.")

The Board argues that the plan of the Convention doctrine should not apply in this case because this case involves the Elections Clause of Section 4 of Article I of the Constitution. The Board relies on Allen v. Cooper, in which the Supreme Court reaffirmed that Congress could not abrogate a state's sovereign immunity through Congressional action pursuant to powers vested in Congress under Article I. 140 S.Ct. 994, 1001–1002 (2020). But the Supreme Court later applied Allen in PennEast, where the Court held that no congressional abrogation is necessary where the States

agreed in the plan of the Convention not to assert any sovereign

immunity defense.  PennEast, 141 S.Ct., at 2259 (quoting Allen,

140 S.Ct., at 1003.)  Instead, where the purposes of the

Constitution require the powers of the States to yield to those of the

Federal Government, the Constitution strips States of sovereign

immunity and no Congressional abrogation is required.  Id.

Here, the Elections Clause is a "fundamental postulate"

bestowing the government of the United States power to carry out

the Constitution's purposes regarding federal elections.   Article I,

Section 4 of the Constitution, the Elections Clause, states:

> The Times, Places and Manner of holding Elections for
> Senators and Representatives, shall be prescribed in
> each State by the Legislature thereof; but the Congress
> may at any time by Law make or alter such Regulations,
> except as to the Places of [choosing] Senators.

The Elections Clause, the Supreme Court has held, "reveal[s] the

Framers' understanding that the powers over the election of federal

officers had to be delegated to, rather than reserved by, the States."

U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 804 (1995).

Rather than bestowing States the authority to regulate elections to

which federal law must bend, the Constitution gave Congress

plenary power over regulating federal elections such that the States'

roles in federal elections have "always existed subject to the express qualification that [the States' roles] 'terminate[] according to federal law.'" Arizona v. Inter Tribal Council of Arizona, Inc., 570 U.S. 1, 15 (2013) (quoting Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 347 (2001)). The Elections Clause, then, embodies the understanding between the States and the Federal Government at the Founding that the States' sovereign immunity would bend to the powers of the Federal Government over federal elections. Accordingly, where Congress acts pursuant to its powers under the Elections Clause, the plan of the Convention doctrine applies, and a state will not be able to take refuge in the Eleventh Amendment's sovereign immunity protections when sued in federal court.

The Seventh Circuit has held that the National Voter Registration Act, the statute at issue here, was enacted pursuant to Congress's authority under the Elections Clause. League of Women Voters of Ind., Inc. v. Sullivan. 5 F.4th 714, 723 (7th Cir. 2021) ("Congress's authority [to enact] the NVRA is rooted in the Constitution itself, whose Elections Clause expressly empowers Congress to make or alter state election regulations." Id. (cleaned up)). Where, as here, the NVRA is allegedly violated by a state, the

plan of the Convention doctrine applies.  Therefore, the Court finds
that the Board, as an agency of the State of Illinois, is not entitled
to sovereign immunity under the plan of the Convention doctrine
and may be sued.  For the same reasons, the Board's Motion to
Dismiss (d/e 9) is DENIED.

### ii. Director Thomas and Deputy Director Hobson are also proper parties.

Defendants Director Thomas and Deputy Director Hobson,
both employees of the Board, also move for summary judgment.
Director Thomas and Deputy Director Hobson argue that they are
improper parties because they not tasked with the enforcement of
the NVRA.  However, the Foundation does not allege that Director
Thomas and Deputy Director Hobson have failed to <u>enforce</u> the
NVRA, the Foundation alleges Director Thomas and Deputy Director
Hobson have <u>violated</u> the NVRA by enforcing Section 5/1A-25, the
state law they concededly are tasked with enforcing as employees
for the Board.  <u>See</u> 10 ILCS 5/1A-1; 10 ILCS 5/1A-25; Decl. of
Cheryl Hobson (d/e 30) ¶ 4 (duties include "maintaining and
helping oversee the statewide voter registration system"); Decl. of
Kyle Thomas (d/e 30) ¶ 4 (duties include "administration

development and implementation of policy and procedures of the statewide voter registration program").  The Foundation alleges that Director Thomas' and Deputy Director Hobson's actions in enforcing Section 5/1A-25 by not allowing the Foundation to examine or make copies of Illinois's statewide voter registration list are violations of the NVRA's Public Disclosure Provision.  As a result, Director Thomas and Deputy Director Hobson are directly responsible for the allegations here and, therefore, are proper parties.  For the same reasons, Director Thomas' and Deputy Director Hobson's Motion to Dismiss (d/e 9) is DENIED.

## B. The Foundation is entitled to summary judgment on Count I.

Both parties request summary judgment on the Foundation's single claim that Section 5/1A-25 violates and is preempted by the Public Disclosure Provision.  Generally, a preemption analysis begins with a presumption against preemption because "the historic police powers of the States were not to be superseded by" Congress. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). However, that presumption "does not hold when Congress acts under [the Elections Clause], which empowers Congress to 'make or alter' state election regulations."  Inter Tribal Council, 570 U.S., at

14 (quoting Art. I, § 4, cl. 1).  In such cases, like the one here, "the reasonable assumption is that the statutory text accurately communicates the scope of Congress's pre-emptive intent." Id.  The presumption for, rather than against, federal preemption is, therefore, the proper starting point here because this case involves the NVRA, which was enacted pursuant to Congress's powers under the Elections Clause.  Cf. Inter Tribal, 570 U.S., at 15; Common Cause v. Lawson, 937 F.3d 944, 947 (7th Cir. 2019).

The question here, then, is whether Illinois's Section 5/1A-25 conflicts with the Public Disclosure Provision of the NVRA.  See Inter Tribal, 570 U.S., at 9.  "If so, the state law, so far as the conflict extends, ceases to be operative." Id. (quoting Ex parte Siebold, 100 U.S. 371, 392 (1880)).  The Court finds that Section 5/1A-25 does so conflict and is, therefore, preempted by the NVRA.

The disputes between the parties regarding Section 5/1A-25's conflict with the Public Disclosure Provision are twofold.  First, the parties dispute whether the statewide voter registration list sought by the Foundation and prohibited from full disclosure by Defendants is a "record" within the meaning of the Public Disclosure Provision.  Second, the parties dispute whether Section

5/1A-25's limitation on the disclosure of the statewide voter registration list violates the NVRA's mandate that Illinois make the list "available for public inspection and . . . photocopying."

### i. The statewide voter registration list is a "record" within the meaning of the NVRA.

The NVRA mandates the public disclosure of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of the official list of eligible voters."  52 U.S.C. § 20507(i)(1).  Neither the NVRA's definitions section, 52 U.S.C. § 20502, nor the NVRA's implementing regulations, 11 C.F.R. § 9428, specifically define "all records" as the term is used in the Public Disclosure Provision, so whether "all records" includes Illinois's statewide voter registration list is a matter of statutory interpretation.  The question is also one of first impression for this District and the Seventh Circuit.  Therefore, the analysis must start with the text of the statute.  See Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997).

When interpreting a statute in the first instance, the first step is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the

case." Id.  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Id. at 341.

Defendants argue that the words "all records" are qualified only by the descriptive phrase "concerning the implementation of programs and activities."  That descriptive phrase, Defendants' argument goes, means that the NVRA only mandates the public disclosure of data or programs designed to maintain the statewide voter registration list.  However, that argument puts an unbalanced emphasis on the phrases "concerning the implementation of programs and activities" and "for the purpose of ensuring the accuracy and currency of the official list of eligible voters."  On balance, the two phrases, when read together, make clear that any record, be it data regarding maintenance activities, the processes involved in the maintenance activities, or the output of those maintenance activities, including the statewide voter registration list, must be made available to the public.  Indeed, it would not make sense if the list, as the result of the maintenance activities,

could not be viewed if the purpose of viewing the activities is to ensure the output is correct.

Take, for example, the math equation '2+2=4.' The process by which the output, the number 4, is derived is addition. The inputs are the numbered terms '2' and '2.' The activity is the expression '2+2.' If there were a statute mandating, for the purpose of ensuring the accuracy of the results of math equations, the public disclosure of all records involved in the production of math equations, such a statute would certainly mandate the publication of the final product of '4.' If not, how would one verify that the addition involved in the expression of the equation is functioning correctly? Were only the terms, '2' and '2,' and the activity itself, the addition operator, mandated to be published, and not the result of '4,' there would be no way of knowing whether the activity, the full '2+2' expression, were functioning correctly in each instance. That the Public Disclosure Provision here mandates "all records" be made public "for the purpose of ensuring the accuracy and currency of" the statewide voter registration list similarly must mandate the production of both the activities involved in the list's maintenance and the list itself. Otherwise, the phrase "for the

purpose of ensuring the accuracy and currency" is rendered a

nullity, as the accuracy and currency cannot be ensured without

the list itself.  See TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It

is 'a cardinal principle of statutory construction' that 'a statute

ought, upon the whole, to be so construed that, if it can be

prevented, no clause, sentence, or word shall be superfluous, void,

or insignificant.'" (quoting Duncan v. Walker, 533 U.S. 167, 174

(2001)).  When every word and phrase in the Public Disclosure

Provision is given equal weight, "all records" must include the

statewide voter registration list.

Defendants also argue that, because section 20507(i)(2), the

subsection immediately following the Public Disclosure Provision, is

the only place in the NVRA itself that seeks to narrow or define

what is meant by "all records," the examples listed therein are the

only examples of what is a "record" under the statute.  But section

20507(i)(2) states "the records maintained pursuant to paragraph

(1) shall include lists of the names and addresses of all persons to

whom notices described in subsection (d)(2) are sent, and

information concerning whether or not each such person has

responded to the notice as of the date that inspection of the records

is made." <u>See</u> 52 U.S.C. § 20507(i)(2) (emphasis added).  Section 20507(i)(2) does not say that the examples found therein are the <u>only</u> examples of what can be a record or that other types of records are specifically excluded from the statute.  Instead, the Public Disclosure Provision casts a wide net, mandating "<u>all</u> records" be made publicly available.  Such expansive language "sets a floor, not a ceiling." <u>Project Vote/Voting for Am., Inc.</u>, 682 F.3d 331, 337 (4th Cir. 2012) (rejecting the argument that section 20507(i)(2) limits "all records" to only those stated therein).  As explained above, the Court finds that the phrase "all records," as used in the Public Disclosure Provision, necessarily includes the statewide voter registration list.

This finding is also supported by decisions from other federal courts outside the Seventh Circuit, both at the Circuit level and District level, holding that the Public Disclosure Provision includes records of an involving statewide voter registration lists.  <u>See</u> <u>Project Vote</u>, 682 F.3d at 335–36 (holding that applications to register are "records" under the Public Disclosure Provision); <u>Pub. Interest Legal Found. V. Bellows</u>, Case No. 1:20-cv-00061, 2022 U.S. Dist. LEXIS 38875 (D. Me. Mar. 4, 2022); <u>Judicial Watch, Inc. v. Lamone</u>, 399 F.

Supp. 3d 425, 439–41 (D. Md. 2019) (holding that voter registration lists are included in "all records"); <u>True the Vote v. Hosemann</u>, 43 F. Supp. 3d 693, 719 (S.D. Miss. 2014) ("The Court likewise concludes that the Voter Roll is a 'record' and is the 'official list of eligible voters' under the NVRA Public Disclosure Provision." (cleaned up)).

Lastly, Defendants argue that the State's interest in protecting individuals' privacy necessitates that the statewide voter registration list be kept from public disclosure.  While the Court agrees that privacy interests are implicated here, the Court does not agree that those interests should allow Defendant's to continue to violate the NVRA.  While the Public Disclosure Provision "must be read in conjunction with the various statutes enacted by Congress to protect the privacy of individuals," <u>Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections</u>, 996 F.3d 257, 264 (4th Cir. 2021), the Public Disclosure Provision also "does not <u>require</u> the disclosure of sensitive information that implicates [those] privacy concerns." <u>Project Vote, Inc. v. Kemp</u>, 208 F.Supp.3d 1320, 1344 (N.D. Ga. Sept. 19, 2016) (<u>Project Vote II</u>).  According to the state law at issue in this case, the statewide voter registration list is already made available to "State or local political committee[s] and . . .

governmental entit[ies] for governmental purpose[s]."  10 ILCS 5/1A-25.  By Illinois's own terms, then, the interest in protecting citizens' privacy is not infringed when the list is made available for viewing.  Moreover, to the extent that political committees and governmental entities are able to protect privacy in the way general public disclosure of the list cannot, the Court believes that proper redaction of highly sensitive information can be accomplished without an undue burden on the State.  Indeed, other courts have also held that, in complying with the Public Disclosure Provision, States may limit the revelation of highly sensitive information.  See Project Vote, 682 F.3d at 339 (redacting Social Security Numbers); True the Vote, 43 F.Supp.3d at 734 (redacting telephone numbers and Social Security Numbers); Project Vote II, 208 F.Supp.3d at 1344 (redacting telephone numbers, Social Security Numbers, portions of emails, and birthdates).  As such, the Court finds that Illinois's interest in protecting the privacy of its citizens is not so great as to permit noncompliance with the Public Disclosure Provision.

Accordingly, the Court finds that the statewide voter registration list sought by the Foundation is a "record concerning

the implementation of programs and activities conducted for the

purpose of ensuring the accuracy and currency of the official list of

eligible voters."  See 52 U.S.C. § 20507(i)(1).

### ii. Section 5/1A-25's limitation on the public disclosure and photocopying of the statewide voter registration list violates the Public Disclosure Provision of the NVRA.

Having found that the statewide voter registration list is a

"record" for purposes of the Public Disclosure Provision, the Court

now finds Illinois's Section 5/1A-25 is preempted by the NVRA.

Where a state law either "stands as an obstacle to the

accomplishment and execution of" an act of Congress, Hines v.

Davidowitz, 312 U.S. 52, 67 (1941), or makes "compliance with both

federal law and state regulations" impossible, Florida Lime &

Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142–143 (1963), the

state law will be preempted.  The "ultimate task in any pre-emption

case is to determine whether state regulation is consistent with the

structure and purpose of the statute as a whole."  Gade v. Nat'l

Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992).

The NVRA was enacted by Congress to "protect the integrity of

the electoral process" and "to ensure that accurate and current

voter registration rolls are maintained."  52 U.S.C. § 20501(b).  To that end, the NVRA mandates that "[e]ach State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," including the statewide voter registration list at issue here.  52 U.S.C. 20507(i)(1).

Illinois's state law, in turn, explicitly prohibits such disclosure subject to only two exceptions: (1) disclosure of the statewide voter registration list to political committees and governmental entities, and (2) allowing the public to view the list only "on a computer screen at the Springfield office of the State Board of Elections, during normal business hours other than during the 27 days before an election, but the person viewing the list under this exception may not print, duplicate, transmit, or alter the list."  10 ILCS 5/1A-25.  Moreover, viewing the list in full is, as Defendants admit, not possible; a person can only search the list for specific individuals.  DSUMF (d/e 30) ¶¶ 10–11.

Section 5/1A-25 conflicts with the Public Disclosure Provision. While the NVRA mandates the Board make the statewide voter registration list both available for inspection and available for photocopying at a reasonable cost, Section5/1A-25 explicitly prohibits any printing, duplication, or transmission of the same list. Indeed, when the Foundation's representative traveled to the Board's office in Springfield, Illinois, the representative was not allowed to view, print, or copy the list.  Not only was Defendant's refusal to allow the Foundation's representative to view the list in violation of Section 5/1A-25's own public disclosure mandate, Section 5/1A-25's limitation on photocopying or duplication clearly conflicts with the Public Disclosure Provision's mandate that the Board make such duplication available at a reasonable cost.  As a result, Defendant's refusal to make the statewide voter registration list available for viewing by individuals the same way the list is available to political parties is a violation of both Section 5/1A-25 itself and the Public Disclosure Provision.  Additionally, Section 5/1A-25's duplication prohibition is preempted by the NVRA.  Gade, 505 U.S. at 98 (Where "compliance with both federal and state

regulations is a physical impossibility," the state law is preempted by the federal law.)

## IV.   CONCLUSION

The Foundation has shown that, on the undisputed material facts, Defendants acted in violation of the Public Disclosure Provision of the NVRA when Defendants refused to make available for viewing and photocopying the full statewide voter registration list.  The Foundation has also shown that Section 5/1A-25 conflicts with, and is preempted by, the Public Disclosure provision insofar as Section 5/1A-25 prohibits the photocopying and duplication of the same list.  Accordingly, the Foundation's Motion for Summary Judgment (d/e 22) is GRANTED, and Defendants' Motion for Summary Judgment (d/e 29) is DENIED.  For similar reasons, the Motion to Dismiss (d/e 9) is DENIED.

Defendants are hereby ORDERED to implement policies and procedures which make available to the public the statewide voter registration list, allowing for redaction of telephone numbers, Social Security Numbers, street numbers of home addresses, birthdates, identifiable portions of email addresses, and other highly sensitive personal information.  Defendants are further ORDERED, pursuant

to 52 U.S.C. §20510(c), to pay the Foundation its attorneys' fees, costs, and expenses.  The Clerk is DIRECTED to enter judgment in favor of Plaintiff the Foundation.  This case is closed.

**IT IS SO ORDERED.**
**ENTERED: March 8, 2022**
**FOR THE COURT:**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**